

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: October 30, 2023.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BENTOLI, INC. | § | CASE NO. 23-10827 |
| | § | |
| DEBTOR. | § | |

### FINAL ORDER (A) AUTHORIZING DEBTOR TO (I) OBTAIN DEBTOR IN POSSESSION FINANCING AND (II) USE CASH COLLATERAL, AND (B) DETERMINING ADEQUATE PROTECTION AND SUPERPRIORITY CLAIMS AND LIENS

This matter came before the Court on October 19, 2023, on the Debtor's *Motion for Interim & Final Orders (A) Authorizing Debtor to (I) Use Cash Collateral and (II) Obtain Debtor in Possession Financing; and (B) Determining Adequate Protection and Superpriority Claims and Liens* filed October 1, 2023 (ECF 6) (the "***Motion***") for the entry of interim and final orders (a) authorizing the Debtor to obtain debtor in possession financing and use cash collateral, and (b) determining adequate protection and superpriority claims and liens; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157; and this proceeding being a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(D) and (M); and finding that the Court may

enter a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in the Court being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being given; and the Court having found that no other or further notice is needed or necessary; and the Court having reviewed and considered the Motion and the Declaration[1]; and the Court having heard statements and testimony in support of the Motion at a hearing held before the Court on October 5, 2023 (the "***Interim Hearing***") and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing (for the reasons stated on the record at the Interim Hearing) established just cause for the relief sought in the Motion on an interim basis; and the Court having entered the *Interim Order (A) Authorizing Debtor to (I) Obtain Debtor In Possession Financing And (II) Use Cash Collateral, and (B) Determining Adequate Protection and Superpriority Claims and Liens* on October 12, 2023 (ECF 43) (the "***Interim Order***"); and the record made and the evidence submitted at the final hearing held before this Court on October 19, 2023 (the "***Final Hearing***"); and it appearing that approval of most of the final relief requested in the Motion is fair and reasonable, is in the best interests of the Debtor's estate, its creditors, and other parties-in-interest; and is an appropriate exercise of the Debtor's business judgment; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefore, and for the reasons set forth on the record on October 23, 2023, it is hereby ORDERED that:[2]

1. The Motion is granted on a final basis to the extent set forth in this order (the "***Final Order***").

---

[1] Capitalized terms not defined in this Final Order bear the meanings given to them in the Motion.

[2] Whether stated herein or on the record, Findings of Fact shall be construed as Conclusions of Law and Conclusions of Law shall be construed as Findings of Fact when appropriate. *See* FED. R. BANKR. P. 7052.

2.       The Debtor is authorized to use Cash Collateral (as defined herein) on the terms set forth in the Motion and herein. Debtor shall provide a replacement lien as adequate protection for the use of such Cash Collateral as provided below.

3.       The Debtor was authorized pursuant to the Interim Order to execute the Debtor in Possession Promissory Note and Security Agreement (the "***DIP Note***") and any related documents and to use the funds as set forth in the Motion. The Debtor is authorized to perform pursuant to the terms of the DIP Note. As of October 19, 2023, the Debtor has not taken any advances under the DIP Note.

4.       From and after the Petition Date, any amounts loaned by the Lender to the Debtor pursuant to the DIP Note and this Final Order, if any, shall be considered a "***DIP Obligation***" hereunder.

5.       As adequate protection for the use of Cash Collateral and any post-petition diminution in the value of such cash collateral, the Court grants to Liminality Ventures LLC ("***Liminality***" or "***Lender***") replacement liens on all collateral pledged to the Lender pursuant to the various pre-petition instruments governing the pre-existing lending relationship (collectively, the "***Collateral***"), to the same extent and priority as they existed pre-petition.

### The Pre-Petition Claims Stipulation

6.       The Debtor stipulates that, pursuant to the Pre-Petition Claim Documents (as defined below) and applicable law, the Lender holds a valid, enforceable, and allowable claim against the Debtor, as of the Petition Date, in an aggregate amount equal to at least $322,160.65 of unpaid principal, plus any and all interest, fees, costs, expenses, charges, and other claims, debts or obligations of the Debtor to the Lender that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law. The Lender's claim as described in the preceding sentence together with all post-Petition Date interest, fees, costs, and charges allowed to the Lender

on such claim pursuant to Bankruptcy Code § 506(b) shall collectively be referred to hereunder as the "***Lender's Pre-Petition Claim***". The Debtor acknowledges and stipulates that the Lender advanced the amounts that comprise the Lender's Pre-Petition Claim in new-money advances to the Debtor in the one year prior to the Petition Date.

7.      The Debtor stipulates that the Lender's Pre-Petition Claim constitutes an allowed, legal, valid, binding, enforceable, and non-avoidable obligation of and claim against the Debtor, and shall not be subject to any offset, defense, counterclaim, avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or any other applicable law, and that the Debtor and its estate do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and non-avoidability of the Lender's Pre-Petition Claim.

### The Pre-Petition Claim Documents Stipulation

8.      The Debtor stipulates that the Lender's Pre-Petition Claim is evidenced by certain documents executed and delivered to the Lender by the Debtor, including, without limitation, the Second Amended Secured Note.

9.      The Second Amended Secured Note, and all other instruments or documents executed in connection therewith or related thereto shall be referred to herein collectively as the "***Pre-Petition Claim Documents***." True and correct copies of certain of the Pre-Petition Claim Documents are maintained by the Debtor and may be made available to interested parties upon request.

10.     The Debtor stipulates that the Pre-Petition Claim Documents are genuine, valid, existing, legally enforceable and admissible in the Case for all purposes.

## The Lender's Pre-Petition Collateral Stipulation

11.     The Debtor stipulates that the Lender's Pre-Petition Claim evidenced by the Pre-Petition Claim Documents is secured by perfected first-priority liens and security interests in, *inter alia*, all assets owned by the Debtor on the Petition Date and as provided under Section 552 of the Bankruptcy Code or any other applicable Bankruptcy Code Sections (collectively, the "***Lender's Pre-Petition Collateral***"), including, without limitation, the following personal property (or real property where noted): (i) all goods, accounts (including accounts receivable and health-care insurance receivables), equipment, inventory, contract rights or rights to payment of money, leases, license agreements, franchise agreements, general intangibles, commercial tort claims arising out of or related to Frank Maresma's affiliation with Debtor and/or SanaCare Holdings, LLC or any related affiliates, documents, instruments (including any promissory notes), chattel paper (whether tangible or electronic), cash, deposit accounts, securities accounts, fixtures, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), securities, and all other investment property, supporting obligations, and financial assets, whether now owned or hereafter acquired, wherever located; (ii) all of Debtor's books and records relating to any of the foregoing; and (iii) any and all claims, rights and interests in any of the above and all substitutions for, additions, attachments, accessories, accessions and improvements to and replacements, products, proceeds and insurance proceeds of any or all of the foregoing. The Lender's liens and security interests in the Lender's' Pre-Petition Collateral were granted pursuant to, inter alia, the Pre-Petition Claim Documents.

12.     The Debtor stipulates that the Lender has properly perfected its first-priority liens and security interests and other liens in the Lender's Pre-Petition Collateral as evidenced by, among other things, the Pre-Petition Claim Documents, documents held in possession of the Lender, and documents filed with the appropriate federal, state, county, and other offices.

## CASH COLLATERAL

### Lender's Cash Collateral

13.     The Debtor stipulates that all cash of the Debtor's bankruptcy estate, wherever located, and all cash equivalents, whether in the form of negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, that were on the Petition Date in any of the Debtor's possession, custody or control (or persons in privity with the Debtor), or in which the Debtor will obtain an interest during the pendency of this case, whether via advances under the DIP Note or otherwise, or which represent income, proceeds, products, rents, or profits of any of the Collateral shall constitute the cash collateral of Liminality (collectively, the "**_Cash Collateral_**"), subject only to the Prior Liens (as defined herein). The Debtor stipulates that subject to the Prior Liens, Liminality has a first-priority perfected lien and security interest in the Cash Collateral pursuant to the applicable provisions of the DIP Note, Bankruptcy Code §§ 363(a) and 552(b), and this Final Order.

### Need For and Consent to Limited Use of Cash Collateral

14.     Liminality consents to the Debtor's use of Cash Collateral in strict accordance with the terms and conditions contained in this Final Order. The relief hereunder is necessary to avoid immediate and irreparable harm to the Debtor's estate because, without the use of Cash Collateral, the Debtor will not have the funds necessary to maintain its assets, operate its business, provide financial information, and pay employee compensation, payroll taxes, overhead, and other expenses necessary to maximize the value of the Debtor's estate. The Debtor requires the use of Cash Collateral as provided herein.

15.     Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtor and its estate. The ability of the Debtor to maximize the value of its estate depends upon the Debtor's ability to use the Cash

Collateral of Liminality. Accordingly, the use of Cash Collateral by the Debtor is actual and necessary to preserving its estate.

## Authorization for Limited Use of Cash Collateral

16.     The Debtor is hereby authorized, on a limited basis, to use Cash Collateral only in strict accordance with the terms and conditions provided in this Final Order.

## ADEQUATE PROTECTION OF THE LENDER

## Budgeted Cash Collateral Usage

17.     As adequate protection of Liminality's interest in the Collateral and for the Debtor's use of Cash Collateral and only so long as a default under the DIP Note (hereinafter, a "***Post-Petition Default***") shall not have occurred, the Debtor is authorized to and shall use the Cash Collateral (including any advances under the DIP Note) strictly in accordance with the budget attached hereto as **Exhibit 1** (the "***Budget***"). The Budget includes an amount necessary to reinstate and keep current the obligations owing the U.S. Small Business Administration (the "***SBA***") in respect of the SBA Debt that was authorized to be paid pursuant to the Interim Order. The "***SBA Debt***" shall mean the loan agreement dated May 28, 2020, obtained in connection with COVID relief. To the knowledge of the Debtor, the SBA Debt is the only lien that meets the definition of Prior Liens below.

18.     Liminality's consent to use of Cash Collateral and agreement to extend credit extends only to amounts actually incurred in accordance with the Budget. Subject to the amounts in the Carve-Out (as defined below), upon the occurrence of a Post-Petition Default, Liminality's consent to use of Cash Collateral or agreement to extend credit shall automatically and immediately terminate and any consent for use of Cash Collateral or agreement to extend credit to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn unless such Post-Petition Default is waived by Liminality.

19.      The Budget may be modified in writing only with the prior written consent of Liminality.

## DEBTOR IN POSSESSION FINANCING

20.      To the extent that the Debtor lacks sufficient Cash Collateral to fund its operations and the payment of the amounts set forth in the Budget, the Debtor is authorized to incur the DIP Obligations.

21.      Use of Proceeds of the DIP Note. Proceeds of the DIP Note, if any, shall be used strictly in accordance with the Budget.

22.      Extension of Financing. The Lender has indicated a willingness to provide financing to the Debtor in accordance with the DIP Note and subject to (i) the entry of the Interim Order and this Final Order; and (ii) findings by this Court that such financing is essential to preserving the value of the Debtor's estate, that the Lender is a good faith lender, and that the Lender's claims, superpriority claims, security interests, and liens and other protections granted pursuant to this Final Order will not be affected by any subsequent reversal, modification, vacatur or amendment of this Final Order or any other order, as provided in Section 364(e) of the Bankruptcy Code.

23.      Post-Petition DIP Liens. Effective immediately upon the entry of this Final Order, the Lender is hereby granted liens in and upon the Collateral pursuant to Sections 362 and 364(c)(2) of the Bankruptcy Code to secure the DIP Obligation (the ***"DIP Liens"***). The DIP Liens constitute valid and perfected liens on and security interests in the Collateral and shall be prior and senior to all other liens and security interests, now existing or hereafter arising, in favor of any other creditor or any other person whatsoever subject to any Prior Liens. Notwithstanding any other provision to the contrary in the Motion, in this Final Order, or in any loan documents, the Lender shall not obtain a lien on any causes of action for preferences, fraudulent conveyance, and

other avoidance power claims pursuant to Sections 502(d), 544, 545, 547, 548, and 550 of the Bankruptcy Code.

24.     <u>Superiority Administrative Claim Status</u>. The DIP Obligations, if any, shall constitute, and the Lender shall have, in accordance with Section 364(c)(1) of the Bankruptcy Code, an administrative expense claim (the "***<u>DIP Administrative Claim</u>***") that is senior to any and all administrative expenses and unsecured claims against Debtor now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, all administrative expenses of the kind specified in, or arising or ordered under, Sections 105, 326, 328, 503(b), 507(a), 507(b), 546(c), 726 and 1114 of the Bankruptcy Code, subject to the Carve-Out. The DIP Administrative Claim shall be secured by liens on the Collateral pursuant to Section 364 of the Bankruptcy Code as provided herein.

25.     <u>No Credit Available on More Favorable Terms</u>. Given, among other things, the Debtor's current financial condition and available assets, the Debtor is unable to obtain adequate, unsecured financing from any lender on substantially similar terms or terms more favorable than those provided by the Lender in the DIP Note and within the time required to avoid immediate and irreparable harm to the Debtor. The Debtor has been unable to obtain (a) unsecured credit allowable solely as an administrative expense pursuant to Sections 364(b) and 503(b) of the Bankruptcy Code; (b) credit solely having priority over all other administrative expenses specified in Sections 503(b) and 507(a) and (b) of the Bankruptcy Code; and (c) credit secured by a lien junior to the liens being primed by the DIP Obligation.

<b><u>Replacement and Adequate Protection Liens;<br>Superpriority Administrative Claims</u></b>

26.     Taking into account all factors in this Case, as adequate protection of any diminution in value of Liminality's interest in the Collateral and for the Debtor's use of Cash

Collateral, and subject only to Prior Liens (as defined below), if any, any amounts in the Carve-Out (as defined below), Liminality is hereby granted, effective as of the Petition Date, valid and automatically perfected first-priority replacement liens and security interests in and upon the Collateral that constitutes adequate protection for the Debtor's use of Cash Collateral.

27. To the extent any adequate protection is insufficient to adequately protect the diminution in value of Liminality's interest in the Collateral and Cash Collateral, Liminality is hereby granted superpriority administrative claims and all of the other benefits and protections allowable under Section 507(b), junior only in right to any superpriority administrative claims granted to Liminality on account of the DIP Note, any amounts set forth in this Final Order, and the Carve-Out that shall secure any diminution in value of Liminality's interest in the Collateral and for the Debtor's use of Cash Collateral.

### Automatic Perfection

28. This Final Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of Liminality's security interests in and liens on the Collateral granted and created hereunder, and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of creating, filing, recording, or serving any financing statements, mortgages, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to Liminality by this Final Order.

29. By virtue of the terms of this Final Order, to the extent that Liminality has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the name of the Debtor, such filings shall be deemed to properly

perfect the liens and security interests granted under this Final Order without further action by Liminality.

## Authorization to Act

30.     The Debtor is hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements as the Lender may require as evidence of and for the protection of the Collateral, or that may be otherwise deemed necessary by the Lender to effectuate the terms and conditions of this Final Order and the DIP Note.

## Right to Credit Bid

31.     Subject to Prior Liens, the Lender may credit bid as provided in Section 363(k) of the Bankruptcy Code, any portion and up to the entire amount of the Lender's claims, including, without limitation, both the Lender's Pre-Petition Claim and the DIP Obligations (as applicable), at any time on any individual asset, portion of the assets, or all assets constituting its Collateral in conjunction with any sale pursuant to Section 363 of the Bankruptcy Code (a "***363 Sale***"), in each case, as determined by the Lender (the "***Credit Bid Right***").  The Lender shall be a qualified and permitted bidder in all respects at any auction, and shall not be required to submit a deposit, purchase agreement, or any other deliverable or documentation to the Debtor or its representatives or agents. Upon exercise of the Credit Bid Right, the Lender shall not be required to take title to any individual asset, portion of the assets, or all of the assets, and the Lender shall have the right to designate any person or entity that shall take title to the individual asset, portion of the assets, or all of the assets that are subject to the Credit Bid Right. Except for the holders of any Prior Liens, no other person may credit bid unless the entire amount of the Lender's claims, including both the Lender's Pre-Petition Claim and the DIP Obligations (as applicable), will be indefeasibly paid in full in cash on the closing of the 363 Sale. In the event the Lender exercises its Credit Bid

Right and the amount of the credit bid of the Lender exceeds the total amount of the highest bids for the assets subject to the Credit Bid Right, the credit bid of the Lender shall be deemed the highest and best bid and such credit bid shall be accepted by the Debtor and be presented for approval to the Court.

### Prior Liens

32.     The security interests and liens of the Lender, granted pursuant to the terms of this Final Order are subject to any other valid, perfected and unavoidable liens and security interests of any other secured creditor in any assets of the Debtor existing on the Petition Date that are senior in priority under applicable law to the Lender's liens and security interests granted under any agreements between the Lender and the Debtor and the liens and security interests securing the Lender's indebtedness (collectively, the "***Prior Liens***"). The Debtor or any other party in interest, including the Lender, shall have the right to object to the validity, priority, or extent of any such Prior Liens, (other than the liens of the SBA in connection with the SBA Debt), or the allowance of such debts secured thereby, or to institute any actions or adversary proceedings with respect thereto. The liens granted to the Lender pursuant to this Final Order shall not at any time be (a) made subject or subordinated to, or made *pari passu* with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under Bankruptcy Code Sections 363 or 364(d) or otherwise (except with respect to any Prior Liens), or (b) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Bankruptcy Code Section 551. For the avoidance of doubt, the Court is not granting the Lender any priming liens or *pari passu* liens under Section 364(d)(1) of the Bankruptcy Code.

**Debtor's Stipulations as to the Validity, Perfection,
and Priority of Liminality's Pre-Petition Liens**

33.     The Debtor acknowledges and agrees that as of the Petition Date, Liminality's liens

on the Collateral were valid, binding, enforceable, non-avoidable, and properly perfected and

senior to all liens except the Prior Liens (the "***Liminality Lien Stipulation***"). The Liminality Lien

Stipulation (and all other Debtor stipulations) are binding on the Debtor subject to the challenge

rights set forth below.

**Challenges to Liens**

34.     The Liminality Lien Stipulation is and shall be immediately binding on the Debtor,

any subsequent trustee, responsible person, examiner with expanded powers, any other estate

representative, and all creditors and parties-in-interest and all of its successors in interest and

assigns, unless, and solely to the extent that the United States Trustee or the Subchapter V Trustee

has timely filed an objection or notice of challenge, and thereafter commences a proceeding

required under the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy rules challenging

the amount, extent, priority and validity of the liens and security interests of Liminality in and to

the Collateral (each such proceeding or pleading commencing and proceeding or other contested

matter, a "***Challenge***"). The "***Challenge Period***" shall run from October 23, 2023, to November

9, 2023, unless otherwise extended by the Court. The only parties that may initiate a Challenge or

seek an extension of the Challenge Period shall be the United States Trustee and/or the Subchapter

V Trustee. By request and for cause stated on the record, the Subchapter V Trustee is hereby

granted expanded duties under Section 1183(b)(2) to (i) review and if necessary challenge the

amount, validity, priority, and extent of the Lender's Pre-Petition Claims; (ii) to provide a written

notice of the Subchapter V Trustee's findings on the amount, validity, priority, and extent of the

Lender's Pre-Petition claims; and (iii) to have the ability to initiate a Challenge or seek an

extension of the Challenge Period during the Challenge Period. The Subchapter V Trustee shall expend no more than $3,500.00 in performing his limited expanded duties under Section 1183(b)(2) to be paid as an administrative expense under the Carve-Out for Professional Fees of the Estate and Subchapter V Trustee. The Court reserves the right to further limit or expand both the Subchapter V Trustee's duties and the amount of reasonable fees and expenses incurred by the Subchapter V Trustee in performing his duties.

### No Additional Liens

35.     Until such time as the Lender's DIP Obligations shall have been indefeasibly paid and satisfied in full, the Debtor shall not be authorized to obtain credit secured by a lien or security interest in the Collateral other than the DIP Note, without the prior written consent of the Lender, or by order of the Court upon reasonable notice.

### No Avoidance

36.     No obligations incurred or payments or other transfers made by or on behalf of the Debtor on account of the DIP Note shall be avoidable or recoverable from the Lender under any Section of the Bankruptcy Code, or any other federal, state, or other applicable law.

### Automatic Stay

37.     The automatic stay is hereby vacated and modified to the extent necessary to permit the Debtor and the Lender to commit all acts and take all actions necessary to implement the DIP Note and this Final Order. To the extent the Debtor commits an event of default under this Final Order that would entitle the Lender to exercise remedies, the Lender shall provide notice to the Debtor and file such notice with the Court and provide ten (10) calendar days' advance notice prior to exercising any such remedies.

**Interest, Fees, Costs and Expenses of the Lender Related to the DIP Note**

38.      During the Case, as additional adequate protection, all interest, fees, costs, and expenses, including attorneys' fees and expenses, due at any time to the Lender under the DIP Note (including, without limitation, the reimbursement of expenses as set forth therein), as applicable, or that are incurred as a result of or are in any way related to the Case (collectively, the "***Lender's Costs***"), may be charged by the Lender and shall be paid by the Debtor out of the Cash Collateral or out of any DIP Note advances, on a monthly basis, up to the aggregate amount for such Lender's Costs. At the sole election of the Lender, the Lender may accrue the Lender's Costs in lieu of seeking immediate reimbursement as provided herein. In no event shall the Lender's Costs paid by the Debtor out of the Cash Collateral or DIP Note advances exceed $20,000.00, without prejudice to the Lender's ability to pursue reasonable fees and expenses actually incurred above $20,000.00 under applicable bankruptcy and non-bankruptcy law.

**Carve-Out for Professional Fees of the Estate and Subchapter V Trustee**

39.      The Lender hereby consents to the professionals retained pursuant to an order of this Court by the Debtor (the "***Debtor Professionals***") retaining any retainers held as of the Petition Date, provided that such retainers are used first for payment of allowed fees and expenses of such firms holding such retainers.  The Lender consents, subject to the terms and conditions set forth in this Final Order, to a carve out from the Collateral for the payment of (i) the allowed professional fees and expenses of Debtor Professionals in an amount not to exceed (a) the amounts set forth in the Budget to be used to pay fees earned and expenses incurred prior to the occurrence of a Post-Petition Default, plus (b) an aggregate amount not to exceed $50,000 for Debtor Professionals to be used to pay fees earned and expenses incurred subsequent to the occurrence of a Post-Petition Default; (ii) subject to Court approval of a separate motion authorizing post-petition payments to the Subchapter V Trustee, beginning October 15, 2023, and continuing on the 15th of each month

until the Case is converted, dismissed or confirmed, Debtor shall make $1,000 payments to the Subchapter V Trustee to be held in the Subchapter V Trustee's IOLTA account to be applied to court-approved Subchapter 5 Trustee invoices; and (iii) the allowed professional fees and expenses of the Subchapter V Trustee including an amount not to exceed $3,500.00 for the fees and expenses incurred in carrying out the Subchapter V Trustee's limited expanded duties under Section 1183(b)(2) during the Challenge Period (collectively, the "***Carve-Out***").

40.     Payments from the Carve-Out shall be subject to any terms and conditions of the engagement agreements and appurtenant orders for the employment of Debtor Professionals.  The Debtor shall be permitted to pay compensation and reimbursement of expenses incurred prior to the occurrence of a Post-Petition Default in accordance with the Budget and allowed and payable under Bankruptcy Code Sections 330 and 331, as the same may be due and payable solely from the Carve-Out. Other than the Carve-Out set forth above, the Lender does not consent to any carve-out from its Collateral for payment of any fees and expenses of the Debtor Professionals.

41.     Notwithstanding the foregoing, and irrespective of the Carve-Out, in no event shall Cash Collateral, the Carve-Out, or the proceeds of any loans, advances, or other funds made available by the Lender to or for the benefit of the Debtor be used for the payment or reimbursement of any fees, expenses, costs or disbursements of any Debtor Professional or other persons incurred with the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Lender's pre-petition or post-petition agreements, this Final Order, or any liens or security interest granted thereby or with respect thereto, or any other rights or interests of the Lender under any of the referenced agreements, (b) investigating, asserting, prosecuting or the joinder in any claims or causes of action against the Lender, or any of its employees, affiliates, agents, or attorneys

(whether arising under state law, the Bankruptcy Code, or any other federal or foreign law); (c) preventing, enjoining, hindering or otherwise delaying the Lender's enforcement of the DIP Note or this Final Order or any realization upon any Collateral; (d) incurring indebtedness except as permitted by the DIP Note or this Final Order; (e) modifying the Lender's rights under any DIP Note or this Final Order without the Lender's consent in its sole and absolute discretion; (f) asserting or declaring any liens or security interests granted under any of the DIP Note, or this Final Order to have a priority other than the priority set forth herein or therein; (g) asserting, prosecuting or the joinder in, any action or other proceeding seeking to grant a lien or security interest senior to, or on parity with, the liens and security interests of the Lender in the Collateral or any portion thereof without the Lender's consent in its sole and absolute discretion; (h) asserting or declaring any of DIP Note, or this Final Order to be invalid, not binding or unenforceable in any respect; or (i) using Cash Collateral or selling any Collateral except as specifically permitted in the DIP Note or this Final Order.

## No Surcharge

42. No costs or expenses of administration, which have or may at any time be incurred in this Case (or in any successor Chapter 7 case), shall be charged against the Lender, its claims or the Collateral pursuant to Bankruptcy Code Section 506(c) without the prior written consent of the Lender in its sole and absolute discretion, and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender. The Lender shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

## Proofs of Claim

43. The Lender shall not be required to file a proof of claim in the Case or subsequent case(s) of the Debtor under any Chapter of the Bankruptcy Code, and the Debtor's stipulations in

the Interim Order and this Final Order shall be deemed to constitute a timely filed proof of claim against the Debtor. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative expense claims and priority claims) in the Case or subsequent case(s) shall not apply to the Lender with respect to the Lender's Pre-Petition Claim or the DIP Obligations. Notwithstanding the foregoing, the Lender is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) a proof of claim for any claims of the Lender arising from the Pre-Petition Claim Documents or in respect of the Lender's Pre-Petition Claim; provided, however, that nothing in this Final Order shall waive the right of the Lender to file its own proof of claim against the Debtor.

## **Other Terms**

44.     The terms hereunder and under the DIP Note, the security interests and liens granted to the Lender under the Interim Order and granted and confirmed by this Final Order, and the rights of the Lender pursuant to the Interim Order and this Final Order with respect to the Collateral, and treatment of the Lender's Pre-Petition Claim and the DIP Obligations shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor without the prior written approval of the Lender.

45.     The terms and provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting to Chapter 7 or dismissing this Case, except for the Debtor's authority to use Cash Collateral and any obligations of the Lender under the DIP Note (all of which shall immediately terminate upon entry of such an order). The terms and provisions of this Final Order, as well as the priorities in payment, liens, and security interests granted pursuant to the Interim Order and granted and confirmed by this Final Order and the DIP Note, shall continue in this or any subsequent case under the Bankruptcy Code of the Debtor, and such priorities in payment, liens, and security interests shall maintain their priority as

provided by the Interim Order and provided and confirmed by this Final Order until such time as the Lenders' Pre-Petition Claim and the DIP Obligations shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Claim Documents and the DIP Note and the Lender shall have no further obligation or financial accommodation to the Debtor.

46.     The provisions of this Final Order shall inure to the benefit of the Debtor and the Lender, and they shall be binding upon (a) the Debtor and its successors and assigns, including any trustee or other fiduciary hereafter appointed as legal representative of the Debtor or with respect to property of the estate of the Debtor, whether under Chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent Chapter 7 case, and (b) all creditors of the Debtor and other parties in interest.

47.     If any or all of the provisions of the Interim Order or this Final Order are hereafter modified, vacated, or stayed without the prior written agreement of the Lender, such modification, vacation, or stay shall not affect (a) the validity of any obligation, indebtedness or liability incurred by the Debtor to the Lender before the effective date of such modification, vacation, or stay or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby or pursuant to the DIP Note. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtor to the Lender, before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Final Order, and the Lender shall be entitled to all the liens, rights, remedies, privileges, and benefits granted herein and pursuant to the DIP Note with respect to all such indebtedness, obligations, or liabilities.

48.     To the extent the terms and conditions of the DIP Note are in express conflict (as opposed to being additive, limiting, or more specific than this Final Order) with the terms and

conditions of this Final Order, the terms and conditions of this Final Order shall control. This Final Order replaces the terms of the Interim Order.

49.     This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the Court under the Bankruptcy Code, to enforce the terms of this Final Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

50.     All headings in this Final Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

51.     The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Final Order.

# # #

# **Exhibit 1 Budget**

**Bentoli, Inc**
*Proposed Interim Cash Collateral Budget*

|  | Fct | Fct | Fct | Fct |
|---|---|---|---|---|
|  | **6-Oct** | **13-Oct** | **20-Oct** | **27-Oct** |
| **Beginning Balance** | **4,694** | **60,463** | **34,699** | **77,733** |
|  |  |  |  |  |
| **Customer Receipt** | 66,469 | - | 57,510 | 123,715 |
| Affiliate Licensing Fees |  |  |  |  |
| **TOTAL RECEIPTS** | **66,469** | **-** | **57,510** | **123,715** |
|  |  |  |  |  |
| Cost of Goods Sold | (10,000) | (10,000) | (10,000) | (77,550) |
| Freight | - | - | - | (4,825) |
| Payroll, Contractors & Benefits | - | (7,367) | (3,776) | (6,905) |
| Rent | - | - | - | - |
| Utilities | - | - | - | (530) |
| Other SG&A | (700) | (1,049) | (700) | (700) |
| **TOTAL OPERATING DISB.** | **(10,700)** | **(18,416)** | **(14,476)** | **(90,510)** |
| Capex |  |  |  |  |
| **TOTAL OPERATING CASH FLOW** | **55,769** | **(18,416)** | **43,034** | **33,205** |
|  |  |  |  |  |
| *Non-Operating Cash Flows* |  |  |  |  |
| Professional Fees |  |  |  |  |
| Subchapter V Trustee |  |  |  | (1,000) |
| Adequate Assurance Deposit |  | (1,500) |  |  |
| Adequate Assurance Payments to SBA |  | (5,848) |  |  |
| Loan Advances |  |  |  |  |
| **TOTAL NON-OPERATING CASH FLOW** | **-** | **(7,348)** | **-** | **(1,000)** |
| **Ending Balance** | **60,463** | **34,699** | **77,733** | **109,938** |