## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BENTOLI, INC. | § | CASE NO. 23-10827-SMR |
| | § | |
| | § | CHAPTER 11 |
| DEBTOR. | § | |

## SUB V TRUSTEE'S REPORT PER FINAL ORDER (A) AUTHORIZING DEBTOR TO (I) OBTAIN DEBTOR IN POSSESSION FINANCING AND (II) USE CASH COLLATERAL, AND (B) DETERMINING ADEQUATE PROTECTION AND SUPERPRIORITY CLAIMS AND LIENS [ECF NO. 75], AND EXPANDING SUB V TRUSTEE'S DUTIES UNDER SECTION 1183(b)(2)

TO THE HONORABLE SHAD M. ROBINSON
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES, MICHAEL G. COLVARD, SUBCHAPTER V TRUSTEE ("Sub V Trustee") in the above-numbered and styled bankruptcy case, and files this his Sub V Trustee's Report per Final Order (A) Authorizing Debtor to (I) Obtain Debtor In Possession Financing and (II) Use Cash Collateral, and (B) Determining Adequate Protection and Superpriority Claims and Liens [ECF No. 75], and Expanding Sub V Trustee's Duties under Section 1183(b)(2), and would show as follows:

## I.    BACKGROUND

1.1    Bentoli, Inc. ("Bentoli" and/or "Debtor"), filed for relief under Chapter 11, Subchapter V, qualifying as a small business under 11 U.S.C. § 101(51D) as a small business debtor on October 1, 2023 [ECF No. 1].

1.2    Sub V Trustee was appointed on October 3, 2023 [ECF No. 21].

1.3    Bentoli filed its Motion for Interim & Final Orders (A) Authorizing Debtor to (I) Use Cash Collateral and (II) Obtain Debtor in Possession Financing; and (B) Determining Adequate

-1-

Protection and Superpriority Claims and Leins [ECF No. 6].

1.4     An interim hearing was conducted on October 5, 2023, and a final hearing was held on October 23, 2023, resulting in a final order providing in part for challenges to liens, within ¶ 34 stating:

> "The Liminality Lien Stipulation is and shall be immediately binding on the Debtor, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all creditors and parties-in-interest and all of its successors in interest and assigns, unless, and solely to the extent that the United States Trustee or the Subchapter V Trustee has timely filed an objection or notice of challenge, and thereafter commences a proceeding required under the Bankruptcy Code, Bankruptcy Rules and Local Bankruptcy rules challenging the amount, extent, priority and validity of the liens and security interests of Liminality in and to the Collateral (each such proceeding or pleading commencing and proceeding or other contested matter, a ***"Challenge"***). The ***"Challenge Period"*** shall run from October 23, 2023, to November 9, 2023, unless otherwise extended by the Court. The only parties that may initiate a Challenge or seek an extension of the Challenge Period shall be the United States Trustee and/or the Subchapter V Trustee. By request and for cause stated on the record, the Subchapter V Trustee is hereby granted expanded duties under Section 1183(b)(2) to (i) review and if necessary challenge the amount, validity, priority, and extent of the Lender's Pre-Petition Claims; (ii) to provide a written notice of the Subchapter V Trustee's findings on the amount, validity, priority, and extent of the Lender's Pre-Petition claims; and (iii) to have the ability to initiate a Challenge or seek an extension of the Challenge Period during the Challenge Period. The Subchapter V Trustee shall expend no more than $3,500.00 in performing his limited expanded duties under Section 1183(b)(2) to be paid as an administrative expense under the Carve-Out for Professional Fees of the Estate and Subchapter V Trustee. The Court reserves the right to further limit or expand both the Subchapter V Trustee's duties and the amount of reasonable fees and expenses incurred by the Subchapter V Trustee in performing his duties."

1.5     In compliance with the expanded duties provided to the Sub V Trustee, a communication was issued to Bentoli, and to Liminality Ventures LLC ("Liminality"), regarding loan documents and related materials, a true and correct copy of which is attached hereto as **Exhibit A**.

1.6     Sub V Trustee, received the documents in response to Trustee's request, included

within the spread sheet attached hereto as **Exhibit B**, on the 26th day of October, 2023.  The produced documents did not originally include responsive materials in several categories of the requests related to documents showing actual loan funding amounts or loan ledgers.  Supplemental responsive materials were provided to evidence some distributions of loan proceeds – without providing loan ledgers or comprehensive funding material.

1.7     Sub V Trustee supplemented his request for documents and information on October 27, 2023, to request additional documents related to information reflected within Debtor's Schedules, Statement of Financial Affairs and Disclosure [ECF No. 1, p. 64], Sub V Trustee's supplemental request is attached hereto as **Exhibit C**, detailing transactions to Holland & Knight, LLP ("H&K") or Waller, Lansden, Dortch and Dabis, LLP ("Waller").

1.8     On November 6, 2022, H&K/Waller provided documents, including "Confidential Information" pursuant to the Confidentiality and Protective Order, in response to Sub V Trustee's supplemental document request, principally related to payments made to H&K and Waller.

1.9     On November 7, 2023, Sub V Trustee made a request to supplement information seeking documents originally requested on October 27, 2023, that had not been provided and was provided additional material/documents related to sources and use of loan proceeds.

## II.  LOAN DOCUMENTS

2.1     On May 9, 2023 Bentoli entered a Promissory Note and Security Agreement (the "Note") signed by John C. Robinson as interim Chief Executive Officer ("J. Robinson") with William A. Robinson, Sr. ("Robinson, Sr.") whereunder Bentoli promised to pay Robinson, Sr. the sum of $200,000.00, or such lesser amount advanced by Robinson, Sr., together with interest costs and fees.  The obligations evidenced by the Note were to encompass all fees, cash and expenses owed to Robinson, Sr., including fees and cash advanced by or owing to Robinson Sr., in connection

with the Note, the administration of the Note and concerning Robinson, Sr.'s performance and remedies in any litigation, dispute, suit or similar proceeding relating to the Note, or to any workout, collection, bankruptcy, or other enforcement,  Robinson, Sr. was to fund the Note upon Bentoli's written request, with the entire indebtedness to constitute a single indebtedness (Note, ¶ 4).  Bentoli was authorized to use loan proceeds solely for general capital purposes, including without limitation payment of fees and costs of Bentoli's legal and financial advisors and fees and costs of Robinson, Sr. (Note, ¶ 5).  Bentoli provided a security interest in all of substantive Bentoli's assets including all goods, accounts, equipment, tort claims against Frank Marisma, chattel paper, securities, and all additions, attachments, accessories (the "collateral") (Note, ¶ 6, Security Interest).  The Note is to be governed and construed in accordance with the laws of the State of Florida.

2.2     On May 29, 2023, Robinson, Jr. executed the Bentoli Officer's Certificate, as Interim Chief Executive Officer, furnished in connection with the Note, attesting that true and correct copies of (i) Articles of Incorporation; (ii) Bylaws of Bentoli; (iii) Resolution of the Board of Directors approving the execution, delivery and performance of the Note; (iv) List of Officers of Bentoli; and, (v) Certificate of Good Standing are attached as Exhibit A-D, without actually attaching or furnishing Exhibits A-D to the Officer's Certificate.

2.3     A UCC-1 Financing Statement, stamped May 11, 2023 was filed with the Florida Secretary of State, evidencing Bentoli as Debtor, and Robinson, Sr. status as a secured party and containing a description of the collateral, generally reference all goods, accounts, equipment, inventory, contract rights, and other assets including tort claims against Frank Marisma, in a manner consistent with provisions stated within the Note (Note, p. 3, ¶ 6(a)(i)(iii)).

2.4     On May 9, 2023 a Unanimous Written Consent of the Board of Directors was executed by Robinson, Sr. and William A. Robinson, Jr. ("Robinson, Jr."), authorizing the CEO to

negotiate forms, terms and provisions and to execute and delivery the "Transaction Documents," consisting of the Note and related documents, and authorizing officers of Bentoli to take any and all such actions as they may deem appropriate, and to execute and deliver all necessary filings and deliver such other agreements, amendments and certificates in such form as the Authorized Officer deems necessary or appropriate, and that such actions shall have the same force and effect as if taken at a meeting of the Board, called and constituted pursuant to the bylaws of the Company.

2.5     On July 7, 2023 a Notice of Borrowing was issued by Bentoli in connection with the Note, advising that Bentoli had previously requested loan advances in the aggregate amount of $152,160.65, consisting of: (i) May 10, 2023 advance of $140,160.65; and, (ii) June 13, 2023 advance of $12,000.00, issued by Robinson, Sr., signed by J. Robinson, Interim CEO.

2.6     A Deposit Account Control Agreement between Bentoli and Robinson, Sr., as Lender and Independent Bank, establishing a deposit account at Independent Bank, and granting Robinson, Sr. a security interest in the Deposit Account, confirming Robinson, Sr.'s control over the Deposit Account.

2.7     On July 26, 2023 a Notice of Borrowing was issued by Bentoli, in connection with the Note, advising that Bentoli has previously requested loan advances in the aggregate amount of $50,000.00, in the following amounts: (i) 20,000.00 on July 18, 2023 and (ii) $30,000.00 on July 26, 2023, executed.

2.8     On August 31, 2023 an Amended and Restated Promissory Note and Security Agreement was entered between Bentoli as Borrower and Robinson, Sr. as Lender, whereunder Bentoli promised to pay Robinson, Sr. the sum of $250,000.00, or such lesser amount advanced by Lender, containing, identical provisions set forth within the Note, defining obligations to include all fees, costs, and expense of counsel and consultants and advisors retained by Lender in connection

-5-

with negotiations and closing of the Note, administration of the Note, in connection with negotiations and closing of the Note, administration of the Note and in connection with Lender performance of rights under the Note.

2.9    On September 8, 2023 an Assignment and Assumption Agreement was entered by and between Robinson, Sr. as Assignor and Liminality Ventures LLC ("Liminality"), a Texas Limited Liability Company, as Assignee, of all Assignor's rights, title, interest in the Note, secured indebtedness, the Account Control Agreement and UCC-3, without recourse, representations or warranty, executed by Robinson, Sr., as Assignor, and Liminality by J. Robinson, Director, and acknowledged by Bentoli, by J. Robinson, Interim CEO.

2.10    On September 8, 2023, an Incumbency Certificate of Liminality, was executed by Liminality, signed by J. Robinson, Director and Sole Manager of Liminality, stating that J. Robinson is the person elected or appointed as the acting officer of the company and certifying that the officer is authorized to execute and deliver on behalf of the Assignment and Assumption Agreement, in connection with the Deposit Control Agreement.

2.11    On September 8, 2023 a Second Amended and Restated Promissory Note and Security Agreement was executed by and between Bentoli, as Borrower and Liminality, as Lender, whereunder Bentoli promised to repay the sum of $400,000.00, or such lesser amount advanced by Liminality, together with all fees, costs, and expense of counsel and consultants and advisors retained by Lender in connection with negotiations and closing of the Note, administration of the Note and in connection with negotiations and closing of the Note, administration of the Note and in connection with Lender performance of rights under the Note.

2.12    On September 7, 2023 a UCC-3 Financing Statement was filed with the Secretary of State of Florida, listing Liminality as "Changed or Added Information" and identifying Liminality as

a secured party.

2.13    On September 8, 2023 a Trademark Security Agreement was entered between Bentoli, as Borrower and Liminality, as Lender, granting a security interest in trademarks and service mark registrations, stated in the attached Schedule A, including any royalty fees, income, payments and other proceeds as well as any claims and causes of action with respect thereto and other assets, signed on behalf of Bentoli by J. Robinson, Interim CEO.

2.14    On September 12, 2023 a Notice of Recordation of Assignment Document, No. 900799318, with the U.S. Patent and Trademark Office recording the assignment of certain designated trademark interests owned by Bentoli to Liminality .

2.15    On September 27, 2023, a Notice of Borrowing was executed by Bentoli, J. Robinson, Interim CEO, regarding loan advances of $100,000.00, in the following amounts: (i) $50,000.00 on September 26, 2023; and, (ii) $50,000.00 on September 27, 2023.

2.16    On September 29, 2023 a Notice of Borrowing was executed by Bentoli, signed by J. Robinson, Interim CEO, requesting loan advance of $20,000.00 on September 29, 2023.

2.17    On September 29, 2023 a Pledge and Security Agreement was entered by and among Liminality, as Pledgee, and Robinson, Sr., as Pledgor, whereunder Robinson, Sr., pledged all capital shares of stock in Bentoli, as collateral for the Second Amended and Restated Promissory Note and Security Agreement, dated September 8, 2023, listed on the attached Schedule 1.1, and in connection therewith Robinson Sr. executed a Stock Power and Notice of Pledge of Shares of even date.

### III.    BANKRUPTCY OF BENTOLI AND RELATED BANKRUPTY FILINGS

3.1    On October 1, 2023, Bentoli filed its Schedules and Statement of Financial Affairs, and Disclosures, listing a secured debt owed to Liminality in the amount of $322,160.65 (ECF No. 1, Schedule D).  The Statement of Financial Affairs references funds transferred to H&K, between May

15, 2023 and September 28, 2023, in the amount of $178,354.72 and funds transferred to Waller, between December 20, 2022 and February 15, 2023, in amount of $37,660.65 (ECF No. 1, p. 37 ¶¶ 4.9 and 4.10); and Bentoli's Global Notes, Methodology and Specific Disclosures regarding Debtor's Schedules of Assets and Liabilities and Statement of Filing a Plan (ECF No. 1, p. 64). Payments by Bentoli to Waller as set forth within Statement of Financial Affairs, ¶ 4.8, totaling $37,650.00, appear to predate the inception of the Note. Bentoli payments to H&K, occurring between May 15, 2023 through September 28, 2023, follow the date of Note inception, raising issue whether funds were appropriately utilized for loan purposes, designated as ". . . .for general working capital purposes, including without limitation payment of fees and costs of Bentoli legal and financial advisors, as well as payment for any fees and all fees, costs and expenses incurred by Lender as referenced above or in connection herewith," (Note, p. 2 ¶ 5), since Note proceeds were in part paid to H&K, who has appeared within the Bentoli bankruptcy case as counsel for the Lender, Liminality.

       3.2    Bentoli's disclosures (ECF No. 1, p. 64, Statement 4), indicate that H&K represented the interests of Robinson, Sr. in connection with the credit facility, and that H&K was additionally retained by Bentoli in connection with the "Lawsuit" filed by Alex Palencia ("Palencia"), and Robinson, Sr. shareholder of Bentoli, Inc., and guarantor of obligations purportedly owing to Palencia. Robinson, Jr. was appointed as agent for Robinson Sr., with regard to the Lawsuit. H&K also represented Liminality in connection with the Assumption and Assignment Agreement from Robinson, Sr. to Liminality. H&K withdrew from representing Bentoli in the Lawsuit on or about September 28, 2023. The Disclosures report that "In some instances. . .H&K may have been paid directly by WAR (Robinson, Sr.), JCR (Robinson, Jr.) or Liminality, or in other instances H&K may have been paid by Bentoli, from funds earmarked by WAR, JCR or Liminality for purpose of paying

Waller and/or H&K.  In all instances the amount received by Waller and H&K were considered advances under the line of Credit Facility."  (ECF No. 1, p. 64, Statement 4).

3.3      Bentoli also filed the declaration of John C. Robinson (ECF NO. 2) in support of the Chapter 11 Petition and First Day Motions, providing statements in reference to prepetition financing (ECF No. 2, p. 5 ¶ E.24.a-i), outlining terms, dates and documents detailing the Note as renewed and extended and related credit documents, in a manner consistent within the documents referenced within pp. 3-7, herein.

## IV.   H&K/WALLER DOCUMENTS

4.1      On the 31st day of October, 2023, a Confidentiality and Protective Order, was signed pursuant to a proposed Joint Motion of Liminality Ventures, LLC ( the "Lender"), Bentoli, Inc. (the "Debtor"), and Mike Colvard, Sub V Trustee for entry of a Confidentiality and Protective Order (the "C/A") in contemplation of the delivery and receipt of information from Waller and H&K, related to professional services provided by Waller and H&K, payment for their services and the relationship between payments by Bentoli and the services provided, in contemplation of the Sub V Trustee analysis of the extent of the validity of the underlying secured claims of Robinson Sr. and Liminality.  H&K and Waller provided "Confidential Information" as defined in the C/A, generally consisting of law firm invoices or summaries detailing attorney services and providing statements and billing invoices, also indicating sources of payment, whether Bentoli or otherwise.  While use of confidential information is restricted, the parties agreed that information provided pursuant to the C/A may be referenced within this Sub V Trustee's Report, provided however that actual documents not be included without prior in-camera submission.

4.2      The documents provided by H&K reference a retainer payment by Robinson Sr. in December 2022 of $15,000.00 to Waller, when Palencia filed a State Court lawsuit against Bentoli,

seeking recovery of $200,000.00 Promissory Note, allegedly guaranteed by Robinson Sr, Robinson Jr. and Edward Robinson. Bentoli was alleged to be under control of Frank Marisma at that time. Marisma would not provide information to Robinson Sr. in relation to the lawsuit or concerning Bentoli operations or corporate documents. H&K indicated that Marisma was believed to be in control of Bentoli under an apparent misconception that Palencia retained a 25% ownership of Bentoli shares, but that corporate records were later acquired establishing 97% ownership in Bentoli by Robinson, Sr., changing strategies and approaches to Bentoli issue. H&K substituted as counsel for Bentoli, in the Travis County Lawsuit, providing services which included efforts of settlement, and participating in discovery and within a summary judgment process. H&K indicated that such services were provided prior to reaquiring control over Bentoli, while Robinson, Sr. owned 97% of Bentoli shares – and which were recorded within Waller records as a single client matter indicating Robinson Sr. to be the client but separated into different client categories when representation was provided by H&K. A Summary of Monthly Services provided by both H&K and Waller was produced in response to Sub V Trustee's requests, with both Waller and H&K representing that services provided offered significant benefit to Bentoli.

4.3    The H&K summary indicated the Liminality loan balance was $322,160.65 on the petition date, and of that amount $202,500.00 was expended for payroll and for various professionals retained by Bentoli. Out of the remaining loan funds advanced prior to or on the petition date, $119,660.65 was paid to Waller or H&K. The professionals retained by Bentoli as scheduled within the Statement of Financial Affairs appear to have received: (i) The Smeberg Law Firm, PLLC, $32,000.00; (ii) Harney Partners, $29,000.00; and, BDFTE, LLP, $20,000.00 [ECF No. 1, pp. 39-40] – which retention funds appear to have been advanced by Bentoli, although the Statement of Financial Affairs do not indicate precisely that those retainer funds were paid from Liminality loan

proceeds.

## V.   ANALYSIS OF LOAN DOCUMENTS

5.1     Documents evidencing the loans extended by Robinson, Sr., to Bentoli, generally referenced as the Note and Security Agreement, as renewed and extended, represent an extension of credit by Robinson, Sr. to Bentoli, secured by virtually all assets of Bentoli, (except trademark and patent rights) including accounts receivables and inventory, which appear to be perfected by the filings of UCC-1 Financing Statement with the Secretary of State of Florida, evidencing a secured debtor/creditor relationship between Bentoli and Robinson, Sr.  Approval of the debtor/creditor relationship was ratified by corporate resolution, although the documents attached to the corporate resolution appear incomplete.  Advances pursuant to the Note, as extended and renewed are reflected within the Notices of Borrowing, indicating that $322,160.65 was funded under the Note as renewed/extended.  The Note was amended and restated on two occasions increasing available funding on four occasions, indicating that the total loan advances to Bentoli made from Lender amounted to $322,160.65 – as of September 29, 2023, although no documents were provided evidencing actual funding from Lender to Bentoli, no loan ledger, wires, checks, etc. evidencing funded loan proceeds or confirming receipt by Bentoli of monies advanced by Lender.  Bentoli did produce ledgers reflecting advances to: (i) Berger-Singerman (Florida Counsel between 5/23-9/28); and, (ii) to H&K between 5/27-9/28.  No audit or loan ledger was produced precisely detailing or confirming distribution or use of loan proceeds.

5.2     The loan facility was assigned by Robinson, Sr. to Liminality on September 8, 2023 with no recourse and without reference to any consideration paid in exchange therefore, together with all rights, titles and interests.  Liminality, is a Texas Limited Liability Company, with Robinson, Jr. acting as Interim CEO.  Concurrently with the assumption/assignment, Bentoli entered

the Second Amended and Restated Promissory Note in the amount of up to $400,000.00 with Liminality, and a UCC-3 was filed advising of the loan assignment and confirming Liminality as assignee, renewed and extended loan and perfecting the security interests. A Trademark Security Agreement was also executed/exchanged and filed on September 8, 2023, concurrently with the Second Renewal and Assumption Agreement, assigning and perfecting a security interest in various copyright and trademarks owned by Bentoli, to Liminality. In addition, Robinson, Sr. executed a pledge and security agreement on September 29, 2023, pledging Robinson, Sr.'s Bentoli stock as collateral for Bentoli's debt now owned by Liminality. The last Notices of Borrowing, issued on September 27, 2023 and September 29, 2023, advised of advanced by Liminality to Bentoli under the credit facility of $100,000.00 and an advance of $200,000.00, bringing the amounts reflected within the Notices of Borrowing and the loan balance to $322,160.65, although no documents confirming actual cash advances, or loan proceed deposit receipts by Bentoli have been made available.

5.3     All documents appear appropriate, consistent with a loan relationship as renewed and extended, initiating between Robinson, Sr. and Bentoli, properly perfected and creating a security interest in all substantial assets of Bentoli, collateralizing the loan relationship and confirmed by certification of borrowing/advances made by Robinson, Sr. to Bentoli. The loan relationship was renewed and extended and assigned by Robinson, Sr. to Liminality, and was assumed and reinstated between Liminality and Bentoli, which assignment was timely noticed within UCC-3 filings advising of a perfected security interest. Concurrently with the Assignment, Bentoli and Liminality entered the Trademark Security Agreement, assigning copyright/trademark rights owed by Bentoli to Liminality, on September 8, 2023, properly recorded by a Notice of Assignment with the U.S. Patent and Trademark Office, evidencing a security interest in certain trademark rights of Bentoli

apparently exchanged in consideration for the new advances and increased line of credit made part of the Assumption and Assignment Transaction. No "value indication," of the Bentoli Trademark rights were provided. The Bentoli Schedules show the book value and current market value of the trademark as "unknown" (ECF No. 1, Schedule A/B, Part 10). Subsequent borrowing notices reflect advances under the credit facility, up to $322,160.65 as of September 29, 2023.

## VI. ANALYSIS/POTENTIAL CLAIMS AND CAUSES OF ACTION

6.1    While no records distinctly establishing actual use of loan proceeds have been provided other than for payment of professional fees, the H&K summary and the Disclosures as well as the Statement of Financial Affairs indicate that $119,660.65 from loan proceeds were used to pay attorneys' fees owed to H&K and/or Waller, although payments to Waller appear to predate the Note dated May 9, 2023, and it is unclear whether the payments to Waller made by Robinson, Sr. were then reimbursed to Robinson, Jr. out of the Note proceeds.

6.2    The Note contains provisions authorizing use of loan proceeds for payment of any and all fees, costs and expenses incurred by Lender, indicating that Lender may, but shall not be obligated to advance proceeds under the Note directly any person to whom any amount, fees, costs or expenses "referenced above" are owed. The term "referenced above" appears to pertain to "payment of fees and costs of Borrower's legal and financial advisors."

6.3    Per the summary provided by H&K, payments totaling $119,660.65 were made by Robinson, Sr., or Liminality, as payor to Bentoli as payee to compensate H&K and/or Waller fees and costs. Per H&K/Waller summaries and invoices those retainers and fees were expended in relation to the Palencia lawsuit, in which Bentoli, along with Robinson Sr., Robinson Jr. and E. Robinson were parties, which services of Waller/H&K were claimed to be required as a result of F. Marisma's failure or unwillingness to participate within the lawsuit on behalf of Bentoli, at a time

when F. Marisma was apparently in control of Bentoli. H&K/Waller services were purposely provided in efforts to settle the lawsuit, to gain corporate control over Bentoli and in effort to assist in a turn-around of Bentoli business operations, in the removal of F. Marisma, and in establishing corporate process of Bentoli, including special shareholder meetings in attempts to regain control, seemingly appear to constitute reasonable and necessary fees for services provided.

6.4    Robinson, Sr., Robinson, Jr. and J. Robinson appear to be insiders of Bentoli, as defined within 11 U.S.C. § 101(31), as individuals who are officers or directors, persons in control or relatives of general partner, director, officers or persons in control of debtor. In addition to the statutory definition of insiders, a court must flexibly apply his discretion on a case-by-case basis when ascertaining insider status. *See, e.g., Wilson v. Huffman (In re Missionary Baptist Foundation of America, Inc.),* 712 F.2d 206, 210 (5th Cir. 1983); *Anstine v. Carl Zeiss Maditec AG (In re U.S. Medical, Inc.),* 531 F.3d 1272, 1276 (10th Cir. 2008). Robinson, Sr., was also a Lender of Debtor at a time while still an insider, and Robinson, Jr. and/or J. Robinson appear to be insiders of Liminality, the current lender to Bentoli. Robinson, Jr. is the current interim CEO of Bentoli. The Note, as assumed and restated and assigned, appears to be an insider transaction subject to a higher degree of scrutiny than an arms-length loan transaction with an unrelated Lender.

6.5    The Note and related loan documents are to be construed and governed under the laws of the State of Florida (See, Note, p. 4, ¶ 11). Applicable Florida case law and authorities have not been examined as party of this review, it is presumed that potential fiduciary obligation duties of loyalty and care and good faith, which may be owed by officers and directors to Bentoli, and/or requiring such officers and directors to make "informed business judgments" in exercising their duties, generally prohibit self-dealings which could raise issues whether prepetition actions in obtaining insider loans, collateralized by virtually all Bentoli assets, and use of loan proceeds to

-14-

engage and compensate insider and Bentoli counsel, constitutes sound business judgment or evidences insider dealings to the detriment of Bentoli.

6.6     Use of loan proceeds for purposes not authorized within the Note and related loan documents, or use of funds for purposes that were of little or no benefit to Bentoli, may provide a basis to assert bankruptcy related claims including: (i) avoidance actions under 11 U.S.C. §§ 546, 547, 548 and/or 550; (ii) claims objections under 11 U.S.C. § 502, et seq. and/or (iii) subordination under 11 U.S.C. § 510(c).

6.7     In addition to bankruptcy related claims, the loan relationship could potentially be challenged for lack of consideration or rescission to the extent loan proceeds were not actually advanced to Debtor or were used for an authorized purpose or in the event Bentoli failed to receive an actual benefit from use of the loan proceeds.  *See, Boyter v. MCR Constr. Co.,* 673 S.W.2d 938, 941 (Tex. App.—Dallas 1984, writ ref'd n.r.e.), setting forth elements for remedy of recission from Texas law which may provide an equitable remedy where a breach of fiduciary duty has occurred. *See, Cooper v. Sanders H. Campbell/Richard T. Mullen, Inc.,* 2016 Tex. LEXIS 9253, 2016 WL 4487924 at *10-11 (Tex. App.—Dallas August 24, 2016, no pet.).

## VII.  DISCLAIMER

7.1     The findings and determinations set forth herein, as reported by the Sub V Trustee result from a review of the filings within the bankruptcy case and from documents and information provided by Bentoli and/or H&K/Waller.  No formal discovery processes were engaged.  The Sub V Trustee relies upon the information to be true and correct.  No audits or detailed financial analysis was made or no financial professional was engaged to confirm details of financial data.  Nor has a substantive detailed legal analysis of applicable case law or potential claims that may exist under Florida law been attempted.

7.2     The Sub V Trustee's Report is based on an overall analysis of the loan documents, a general analysis of facts and circumstances related to the requirements of Bentoli for prepetition financing, the alleged use of loan proceeds, the insider status of the parties and perceived objectives to be accomplished, together with the relationships between the parties and Bentoli professionals, the amounts expended and results obtained.

## VIII.   CONCLUSIONS

8.1     The loan documents establish a secured debtor/creditor relationship between Bentoli and Liminality and a perfected security interest in virtually all Bentoli assets on the petition date.

8.2     Loan proceeds in the amount of $322,160.65 have been advanced under the credit facility.

8.3     Use of loan proceeds was authorized for general capital purposes including payment of Bentoli's legal and financial advisors and fees/costs of Robinson, Sr. in connection therewith and could be advanced directly to any parties to whom any amount fees and costs or expenses are owed.

8.4     Costs and fees in the amount of $119,660.65 appear to have been paid by Bentoli to H&K/Waller out of loan proceeds either directly by Bentol or through Robinson, Sr. or Liminality, for attorney's fees and charges, which amount appear reasonable in relation to the nature and extent of the services provided in exchange therefore.

8.5     Attorney services provided by H&K/Waller appear to encompass legal matters relating to the Palencia Lawsuit, in which Bentoli is a defendant, the summary judgment hearing, attempts at settlement, efforts in relation to regaining control of Bentoli from Marisma, assisting in a turn-around process for Bentoli, in relation to the removal of F. Marisma from control over Bentoli and in establishing corporate processes within Bentoli.  Those H&K/Waller services appear to provide actual benefits to Bentoli, which were necessary to avoid the potential consequences of

pending legal proceedings, to regain control over Bentoli, to initiate new corporate systems and to promote a restructuring process.

8.6    Potential claims may exist under applicable state and/or bankruptcy law, however, the facts as presented by Bentoli, H&K/Waller, in response to Sub V Trustee's inquiries do not appear to substantiate potential claims or in determinations which would not support conclusions that: (i) the Note as renewed and extended was properly funded and that prepetition debt is $322,160.65; (ii) the liens of Liminality are perfected; (iii) virtually all assets of Bentoli are properly pledged or secured by Liminality liens; (iv) funding of loan proceeds to compensate H&K/Waller or other professionals was authorized under the terms of the Note; (v) related professional services appear to have provided a benefit to Bentoli; or, (vi) officers, directors, shareholders or insiders of Bentoli acted in the best interest and exercised reasonable business judgment on behalf of Bentoli when obtaining loans, extending security interest or through use of loan proceeds.

8.7    As a result of the findings as referenced above, the Sub V Trustee would not recommend or support further challenge to the extent or validity of the Liminality Note or security interest, and no further extension of the Challenge Period is requested.

Respectfully submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone (210) 227-7591
Facsimile (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

/s/Michael G. Colvard
By:_____
Michael G. Colvard
State Bar No. 04629200
**SUBCHAPTER V TRUSTEE**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document was served electronically by the Court's Electronic Case Filing system, and by first-class U.S. Mail to Debtor's Attorney, Ronald J. Smeberg, The Smeberg Law Firm, PLLC, 4 Imperial Oaks, San Antonio, Texas 78248, and on the parties listed on the attached Service List on November 9, 2023.

/s/Michael G. Colvard

_____

MICHAEL G.  COLVARD