

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 11, 2023.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BENTOLI, INC. | § | CASE NO. 23-10827 |
| | § | |
| DEBTOR. | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

This Court having considered the testimony and evidence presented and having reviewed the *Debtor's Second Amended Plan of Reorganization* filed with the Court's Order at Docket _____ and attached hereto as Exhibit 1 (the "***Plan***") and, it appearing to the Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents filed in support of confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court hereby makes and issues the following Findings of Fact, Conclusions of Law, and Orders:

1

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

1.  The Debtor commenced this chapter 11 case (the "***Chapter 11 Case***") on October 1, 2023 (the "***Petition Date***") by filing a voluntary petition for relief under Subchapter V of chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***"). Venue in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "***Bankruptcy Court***") was proper as of the Petition Date pursuant to 28 U.S.C. §§1408 and 1409 and continues to be proper during the Chapter 11 Cases. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Confirmation of the Plan is a core proceeding pursuant to § 157(b)(2)(L) of title 28 of the United States Code. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### A. Findings of Fact and Conclusions of Law

2.  The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

### B. Eligibility for Relief.

3.  The Debtor is eligible for relief under §§ 109 and 1182 of the Bankruptcy Code.

### C. Judicial Notice.

4.      The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for confirmation) the docket of the Chapter 11 Case maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 Case. Any resolutions of objections to confirmation explained on the record at the Confirmation Hearing are hereby incorporated by reference.

### D. Transmittal and Mailing of Materials; Notice.

5.      Due, adequate, and sufficient notice of the Plan and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given and no other or further notice is or shall be required.

### E. Voting Certification.

6.      The tabulation of the ballots was conducted in accordance with the Bankruptcy Code, as evidenced by the Ballot Summary filed by the Debtor. The following parties in interest originally voted against the Plan: Alexander Palencia, Frank Maresma, Ace Sales Corp. d/b/a Sana Care, and Madfrabia International Corp (the "***Rejecting Parties***"). Each of the Rejecting Parties withdrew their votes rejecting the Plan as evidenced by statements of counsel on the Record.

### F.     Compliance with Requirements of § 1189 of the Bankruptcy Code.

7.      The Plan complies with § 1189 because it was filed by the Debtor within 90 days of the entry of the order for relief under Chapter 11.

**G.      Compliance with Requirements of § 1190 of the Bankruptcy Code.**

8.      In compliance with § 1190 of the Bankruptcy Code, the Plan includes: (1) a brief history of the business operations of the debtor, (2) a liquidation analysis, and (3) projections with respect to the ability of the Debtor to make payments under the proposed plan of reorganization.

**H.  Compliance with the Requirements of §1191 of the Bankruptcy Code.**

9.      In light of the withdrawal of the rejecting votes in consideration of certain modifications to the Plan announced at the Confirmation Hearing, the Plan is a consensual plan under 11 U.S.C. § 1191(a).

**(i)      Section 1191(a)**

10.      The Plan complies with all applicable provisions of § 1129(a) of the Bankruptcy Code, except § 1129(a)(15), which is inapplicable, as detailed below.

a.      <u>**Sections 1129(a)(1)-(2) (Compliance with the Bankruptcy Code)**</u>: The Plan complies with the applicable provisions of the Bankruptcy Code. The requirements of section 1129(a)(1) of the Bankruptcy Code are therefore satisfied.  The Debtor has complied with the terms of the *Order on Debtor's Motion to Set Deadlines Pursuant to Fed. R. Bankr. P. 3017.2* [Dkt. No. 42] (the "***Order Establishing Deadlines***") and the applicable provisions of the Bankruptcy Code.  The requirements of section 1129(a)(2) of the Bankruptcy Code are therefore satisfied.

b.      <u>**Section 1129(a)(3) (Plan Proposed in Good Faith)**</u>.  The Plan has been proposed in good faith and not by any means forbidden by law as required by section 1129(a)(3) of the Bankruptcy Code. The Debtor has proposed the Plan with the legitimate and honest purpose of making distributions to the creditors. The Plan has not been proposed by any means forbidden by law. The Plan fairly achieves a result consistent with the objectives and purposes of the Bankruptcy Code. The Plan is the result of good faith, arms-length negotiations among the Debtor and the Debtor's creditors.

c.      <u>**Section 1129(a)(4) (Disclosure and Approval of Payments)**</u>.  Any payment made or to be made by the Debtor, for services or for costs and expenses in or in connection with the Chapter 11 Case, or in connection with the Plan and incident to the cases, has been approved by or is subject

4

to the approval of the Bankruptcy Court as reasonable, as required by section 1129(a)(4) of the Bankruptcy Code.

d. **Section 1129(a)(5) (Disclosure of Management and Payments to Insiders)**. The identities of or process for appointment of the Reorganized Debtor's directors and officers proposed to serve after the Effective Date have been disclosed (to the extent known). The appointment to, or continuance in, such office of such persons is consistent with the interests of holders of Claims and Interests and with public policy. Accordingly, the Debtor has satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

e. **Section 1129(a)(6) (Regulatory Rate Approval)**. The Plan does not provide for a "rate change" as contemplated by section 1129(a)(6) of the Bankruptcy Code, and therefore, section 1129(a)(6) does not apply to the Plan.

f. **Section 1129(a)(7) (Best Interest of Creditors Test)**. Based on the liquidation analysis performed on behalf of the Debtor, with respect to each impaired class of claims or equity interests, (a) each holder of a claim or equity interest of such class has either accepted the Plan, or (b) will receive or retain under the Plan on account of such claim or equity interest, property of a value, as of the Effective Date, that is not less than the amount that the holder would so receive or retain if the applicable Debtor was liquidated under chapter 7 of the Bankruptcy Code. The requirements of Section 1129(a)(7) of the Bankruptcy Code are therefore satisfied.

g. **Section 1129(a)(8) (Acceptance of Plan by All Classes)**. Section 1129(a)(8) of the Bankruptcy Code requires that, with respect to each class of claims or interests, such class has either accepted the plan or is not impaired under the plan. As depicted in the Ballot Summary and as modified by statements on the record by the Rejecting Parties' counsel, all classes of claims and equity interests who were entitled to vote on the Plan either voted to accept the Plan or are deemed to have accepted the Plan, and therefore, the requirements of section 1129(a)(8) of the Bankruptcy Code are satisfied.

h. **Section 1129(a)(9) (Payment of Priority Claims)**. The treatment of Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims under Article II of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

i. **Section 1129(a)(10) (At Least One Impaired Class Has Accepted the Plan)**. Section 1129(a)(10) of the Bankruptcy Code provides that if one or more classes of claims is impaired under a plan, at least one class must have accepted the plan, without including any votes of insiders. Impaired

Class 3 voted 100% to accept the Plan. The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

j.    **Section 1129(a)(11) (Feasibility)**.  The financial projections and other evidence supporting Confirmation of the Plan proffered or adduced by the Debtor at, prior to, or in connection with, the Confirmation Hearing (a) are reasonable, persuasive, credible, and accurate as of the dates such analysis or evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been controverted by other evidence; (d) establish that the Plan is feasible and Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtor under the Plan, except as provided in the Plan; and (e) establish that the Reorganized Debtor will have sufficient funds available to meet their obligations under the Plan. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

k.    **Section 1129(a)(12) (Payment of Fees)**.  Pursuant to § 4(b)(3) of the Small Business Reorganization Act of 2019, the Debtors are not required to make quarterly payments to the U.S. Trustee in accordance with 28 U.S.C. § 1930(a)(6)(A). Thus, to the extent Bankruptcy Code section 1129(a)(12) applies, the Plan may be confirmed.

l.    Bankruptcy Code sections 1129(a)(13)-(16) do not apply to the Plan.

11.    Notwithstanding that the Plan is being confirmed as a consensual Plan under Section 1191(a), the Debtor's projected disposable income for five (5) years following the Effective Date in the aggregate amount of $425,000 will be applied to make payments under the Plan (which will be funded in quarterly installments, beginning on April 15, 2024, and continuing on the 15th day of the first month of the quarter until final payment is made), and the value of the property to be distributed under the Plan shall not be less than the projected disposable income of the Debtor.

**I.  Satisfaction of Confirmation Requirements.**

12.    Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in § 1191 of the Bankruptcy Code.

**J.  Good Faith.**

13.    The Debtor and its principals, agents, financial advisers, attorneys, employees, affiliates, and representatives have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by this Confirmation Order.

**K.  Modifications**

14.    The changes made in the Debtor's Plan do not constitute "material" modifications requiring resolicitation; no creditor's treatment has been impaired or worsened, and the modifications provide superior treatment than that proposed under the prior version of the Plan.

**L.  Releases, Exculpations, and Injunctions**

15.    Pursuant to Bankruptcy Rule 3016(c), the Plan describes in specific and conspicuous language all acts to be enjoined by, and identifies the entities that are subject to releases and injunctions provided under, the Plan, including without limitation, Article 13 thereof. The Court finds that each release, exculpation, and injunction provision set forth in the Plan is: (i) within the jurisdiction of the Court under 28 U.S.C. §§ 1334; (ii) essential to the implementation of the Plan pursuant to Bankruptcy Code section 1123(a)(5) and warranted by the circumstances of the Case; (iii) an integral element of the Plan; (iv) the product of an arms-length transaction and a critical element of obtaining the support of the various constituencies for Plan support; (v) fair, equitable, and in the best interests of Debtor's estates and creditors; (vi) important to the overall objectives of the Plan, including without limitation, to finally resolve claims against or among key parties in the Case; and (vii) consistent with Bankruptcy Code sections 105, 1123, and 1129, and other applicable provisions of the Bankruptcy Code.

### M. Rule 9019 Settlement and Compromise

16.     Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, which distributions and other benefits shall be irrevocable and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions and other benefits provided thereunder constitute a good-faith compromise and settlement of all Claims against the Debtor, including all controversies relating to the contractual, legal, and subordination rights that a holder of an Allowed Claim against the Debtor's estate may have with respect to such Allowed Claim or any distribution to be made on account of such Allowed Claim.

17.     The Plan is hereby deemed a motion to approve the good-faith compromise and settlement of all such Claims, and controversies pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order constitutes the Court's approval of the compromise and settlement of all such Claims, and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtor, its Estate, and holders of Claims and is fair, equitable, and reasonable.

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED THAT:**

### A.      Order.

18.     This Confirmation Order shall confirm Debtor's Plan of Reorganization as a consensual plan under 11 U.S.C. § 1191(a).

### B.  Objections.

19.     The Objection to Confirmation filed by MadFraBia International Corp., Ace Sales Corp. d/b/a SanaCare, and Frank Maresma [Dkt. No. 100] was withdrawn under the terms of the court-approved Maresma Compromise. Pursuant to the Maresma Compromise, the proofs of

claim filed by Frank Maresma (Claim No. 14 in the amount of $665,000.00), Ace Sales Corp. d/b/a SanaCare (Claim No. 13 in the amount of $43,750.02) and Madfrabia International Corp. (Claim No. 12 in the amount of $35,000.00) in the total amount of $743,750.02 are deemed withdrawn and disallowed.

20.     The Objection to Confirmation filed by Alexander Palencia [Dkt. No. 102] (the "**Palencia Objection**") was withdrawn in consideration of certain modifications to the Plan announced on the record at the Confirmation Hearing, including to the projected disposable income to be paid thereunder, and subject to a reservation of rights concerning all claims and defenses that have been or may be asserted in the Palencia Adversary or the Removed Case. For the avoidance of doubt, all claims or defenses that have or may be asserted by the Debtor or Alexander Palencia in the Palencia Adversary, including any claim asserted by Alexander Palencia against the Debtor or any guarantor of any such claim, are expressly reserved by each party, and have not been waived by the entry of this Confirmation Order.

21.     All other objections, reservations of rights, statements, or joinders to confirmation have not been withdrawn, waived, or settled prior to entry of this Confirmation Order or otherwise resolved as stated on the record of the Confirmation Hearing, they are hereby overruled on the merits.

### C. Confirmation of the Plan.

22.     The Plan and each of its provisions are confirmed in each and every respect pursuant to §1191 of the Bankruptcy Code. The documents referenced in the Plan and any amendments, modifications, and supplements thereto, and all documents and agreements related thereto, and the execution, delivery, and performance thereof by the Debtor is authorized and approved as finalized, executed, and delivered. Without further order or authorization of the Bankruptcy Court, the Debtor is authorized and empowered to make all modifications to all

documents included as part of the Plan that are consistent with the Plan. As set forth in the Plan, once finalized and executed, the documents contemplated by the Plan shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all liens and other security interests purported to be created thereby.

**D. Effective Date.**

23.     The Effective Date of the Plan is the first business day following the date that is 14 days after the entry of this Confirmation Order. If however, a stay of this Confirmation Order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

24.     The terms of the Plan shall be effective and binding as of the Effective Date of the Plan.

**E. Notice of Entry of the Confirmation Order.**

25.     In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the date of entry of the Confirmation Order, the Debtor shall serve the notice of confirmation (the "***Notice of Confirmation***") by CM/ECF; United States mail, first class postage prepaid; by hand; or by overnight courier service to all parties having been served with the Order Establishing Deadlines. Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph shall be good and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is necessary.

26.     The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### F.  Binding Effect.

27.     Notwithstanding Bankruptcy Rules 3020(e), 6004(g), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims (irrespective of whether such Claims are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan or herein, each Person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor.

28.     The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

### G.  Approval of Plan Releases, Exculpations, and Injunctions.

29.     Each release, exculpation, and injunction provision set forth in the Plan is hereby approved.

### H.  Assumption of Contracts

30.     In accordance with Bankruptcy Code section 1123(b)(2), upon entry of the Confirmation Order, Debtor will be conclusively deemed to have assumed all Executory Contracts not expressly rejected prior to the Effective Date or listed in the Plan Supplement, pursuant to Article 6 of the Plan or another order of the Court.

### I.  Post-Confirmation Business Operations

31.     Debtor is authorized to operate its business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, and in all respects as if there were no pending Case under any chapter or provisions of the

Bankruptcy Code. Except as set forth in the Plan concerning objections to Claims, the Debtor may also settle or compromise any Claims without Court approval.  The Debtor is entitled to retain and compensate professionals without the necessity of further approval of this Court.

### J.  Debtor's Authorization.

32.     Debtor is hereby authorized and fully empowered to take any and all actions as may be necessary and appropriate to consummate, effectuate, and implement the Plan and all transactions contemplated thereby, including, without limitation, to effectuate or otherwise document the transfer of assets, pursuant to the terms, and subject to the conditions, of the Plan.

### K.  Rule 9019 Compromise and Settlement.

33.     Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, the settlement described in the Plan is appropriately described and incorporated into the Plan in all respects.

34.     Pursuant to Bankruptcy Code section 1123 and Bankruptcy Rule 9019, the Maresma Compromise is approved, and the Debtor and the Maresma Entities are hereby authorized to take all actions in order to effectuate the court-approved Maresma Compromise and the terms set forth therein. Cause exists for the non-revocation of the releases and resolution of claims and causes of action set forth in the Maresma Compromise and approved in this Confirmation Order.  Specifically, judicial economy, fairness and convenience to the parties in the Maresma Adversary in preventing relitigation of the complicated and difficult disputes between the parties therein, and the parties' attestation in the Maresma Compromise that this Order's finality in approving the Maresma Compromise was a material consideration to the Maresma Compromise, weigh in favor of preserving the finality of this Order approving the Maresma Compromise in the event of any successor to the Debtor, any potential conversion of the case even post-confirmation to a Chapter 7 with a Chapter 7 Trustee, any revocation of the

12

Confirmation Order, or should the case be concluded even post-confirmation via chapter 11 dismissal, for "cause" such that this Order approving the Maresma Compromise, and the fully executed Maresma Compromise itself, shall remain final and non-revocable notwithstanding §§348, 349 and 1144, as may be applicable.

### L.  Administrative Claims Bar Date

35.     All parties shall file any and all requests for allowance and payment of administrative expenses incurred on or before the day immediately preceding the Effective Date pursuant to Bankruptcy Code section 503, other than Professional Fee Claims (defined below) (collectively, "***Administrative Claims***") on or before the date that is 14 days after the Confirmation Hearing (the "***Administrative Expense Bar Date***"). Administrative Claims filed after the Administrative Expense Bar Date shall be disallowed and forever barred in their entirety.

### M. Professional Fee Claim Bar Date

36.     All parties shall file any and all final applications for allowance and payment of fees, costs, and expenses incurred by any estate professionals through and including the day immediately preceding the Effective Date pursuant to Bankruptcy Code sections 330, 331, 503, or 1103 (collectively, "***Professional Fee Claims***") no later than fourteen (14) days after the Effective Date (the "***Professional Fee Claims Bar Date***"). Professional Fee Claims filed after the Professional Fee Claims Bar Date shall be disallowed and forever barred in their entirety.

### N.  Re-vesting of Property

37.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all of the property of the Estate vests in the Debtor. Except as provided in Bankruptcy Code sections 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors.

### O. Discharge of Subchapter V Trustee

38.     Pursuant to 11 U.S.C § 1183(c)(1), the Subchapter V Trustee services shall terminate with respect to the Debtor and the Case once the Plan has been substantially consummated. Not later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file with the Court and serve on the Subchapter V Trustee, the Office of the United States Trustee, and all parties in interest notice of such substantial consummation pursuant to 11 U.S.C § 1183(c)(2).

### P. Claims of Taxing Authorities

39.     The Debtor reserves all rights to dispute any alleged amounts owed by taxing authorities for property taxes either (a) through the Bankruptcy Court; or (b) directly through the applicable taxing authority. To the extent claims for property taxes become allowed claims, then the amounts owed shall be either paid on the date of allowance or amortized over 48 monthly installments at 12% interest.  The first payment shall be made on the 15th day of the first month following the date of allowance.

40.     To the extent the claim of The County of Bastrop, Texas, collecting property taxes for Elgin Independent School District, for 2023 taxes in the amount of $2,768.74 becomes an allowed claim, the Reorganized Debtor will pay same in the ordinary course of business.  If the Reorganized Debtor does not pay such allowed claim prior to the state law delinquency date, penalties and interest pursuant to the Texas Tax Code shall accrue.  Bastrop's statutory liens are retained until payment in full of any allowed claim, including accrued interest and penalties as applicable.  If the Debtor or Reorganized Debtor is successful in protesting the 2023 tax assessment or the bankruptcy court disallows the claim, The County of Bastrop, Texas shall promptly withdraw its claim.

41.     Massachusetts Department of Revenue filed a claim in the amount of $5195.28. This claim is disputed.   If the claim is allowed, Debtor shall pay the claim on the latter of the 1) Effective Date or 2) the date the Court issues an order allowing claim that is no longer subject to appeal, or or Debtor may elect that the debt be amortized over 48 monthly installments at the statutory interest rate applicable on the Confirmation Date.  The first payment shall be made on the 15th day of the first month following the latter of the 1) Effective Date or 2) the date the Court issues an order allowing claim that is no longer subject to appeal.

42.     Texas Comptroller of Public Accounts filed a claim in the amount of $2419.56. This claim is disputed.   If the claim is allowed, Debtor shall pay the claim on the latter of the 1) Effective Date or 2) the date the Court issues an order allowing claim that is no longer subject to appeal or Debtor may elect that the debt be amortized over 48 monthly installments at the statutory interest rate applicable on the Confirmation Date.  The first payment shall be made on the 15th day of the first month following the latter of the 1) Effective Date or 2) the date the Court issues an order allowing claim that is no longer subject to appeal.

Q.  **Discharge.**

**43.**     On the Effective Date of the Plan, the Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

**R.  Final Confirmation Order.**

44.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

###

Approved as to Form

RONALD J. SMEBERG
State Bar No. 24033967
THE SMEBERG LAW FIRM, PLLC
4 Imperial Oaks
San Antonio, TX 78248
210-695-6684 (Tel)
210-598-7357 (Fax)
ron@smeberg.com
ATTORNEY FOR DEBTOR


**MARTIN & DROUGHT, P.C.**

Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com
By: /s/Michael G. Colvard
Michael G. Colvard
State Bar No. 04629200
**SUBCHAPTER V TRUSTEE**


REED SMITH LLP

By: /s/ Michael P. Cooley
        Michael P. Cooley (SBN 24034388)
        REED SMITH LLP
        2850 N. Harwood Street, Ste 1500
        Dallas, Texas 75201
        (469) 680-4200
        mpcooley@reedsmith.com
COUNSEL FOR ALEXANDER PALENCIA

**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Coral Gables, FL 33134
Tel:     (305) 372-1800
Fax:    (305) 372-3508

By:  */s/ David A. Samole*
David L. Rosendorf
FL Bar No. 996823
dlr@kttlaw.com
David A. Samole
FL Bar No. 582761
das@kttlaw.com
COUNSEL FOR THE MARESMA PARTIES


KEVIN M. EPSTEIN
UNITED STATES TRUSTEE
REGION 7
Southern and Western Districts of Texas

By: */s/ Shane P. Tobin*
        Shane P. Tobin
        Trial Attorney
        CA State Bar No. 137282
        903 San Jacinto Blvd., Room 230
        Austin, Texas 78701
        Telephone: (512) 916-5318
        Fax: (512) 916-5331
        SHANE.P.TOBIN@USDOJ.GOV


HOLLAND & KNIGHT, LLP

By:/s/ Morris D. Weiss
        Morris D. Weiss
        Texas Bar No. 21110850
        100 Congress Ave., Suite 1800
        Austin, Texas 78701
        Telephone: (512) 685-6400
        Facsimile (512) 685-6417
        Morris.weiss@hklaw.com
COUNSEL FOR LIMINALITY VENTURES, LLC

Exhibit 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BENTOLI, INC | § | Case No. 23-10827 |
| | § | SubChapter V |
| Debtor | § | |

### SECOND AMENDED PLAN OF REORGANIZATION OF DEBTOR AND DEBTOR-IN POSSESSION, BENTOLI, INC

The Second Amended Plan (as defined herein) of Debtor and Debtor-in Possession, Bentoli, Inc, ("***Debtor***" or "***Bentoli***"), dated November 29, 2023, is as follows:

**A.      Overview of the Plan as Amended.**

The purpose of the Plan is to reorganize the Debtor by addressing certain contingent liabilities, including from its exiting from its current leased facilities and putting the Reorganized Debtor on stronger financial footing to reassure its vendors, customers, employees and stakeholders of the long-term viability of the Debtor.  The Debtor has been working with its various professionals, including its financial advisors, to prepare for a Subchapter V bankruptcy filing to address all of these issues in one forum to accomplish these goals.  The Debtor has prepared financial projections that it believes are reasonably achievable based on its current circumstances and will devote its net disposable income for five years in the aggregate amount of $425,000 to pay the allowed general unsecured creditors.  In addition, the Plan includes a waterfall (defined herein as the Waterfall) for the potential sharing of the collected recoveries by the Debtor from the Palencia Adversary, and the SPB Claims.  The existing equity holders will be unimpaired.

Debtor previously amended the Plan on October 12, to decrease the Administrative Convenience threshold to $2,000 and provide that any allowed unsecured claim in excess of $2,000 may elect to have its claim treated as an Administrative Convenience claim and paid in full by accepting $2,000.

Debtor filed a motion to modify the Plan on November 23 [Doc. 113], to (i) retain rights and claims regarding Squire Patton Boggs, (ii) provide for the allowance of contingent claims under certain circumstances, (iii) provide for the deferral of certain payments to Liminality,  (iv) add a further condition to the Plan that the Motion to Honor is granted, (v) address certain asserted property taxes, (vi) correct some typographical errors or inconsistencies in the Amended Plan, and (vii) include certain conforming definitions.

Debtor filed an amended motion to modify the Plan on November 29, to incorporate the Maresma Compromise [Doc. 140].

1

**B.      Description and History of the Debtor's Business**

Background to the Debtor's business and this bankruptcy filing can be found in the *Declaration of John Robinson in Support of Debtor's Chapter 11 Petition and First Day Relief* (the "***First Day Declaration***") (Doc. 2), filed contemporaneously with this Plan and incorporated herein by reference.

**C.      Purpose of the Bankruptcy**

Debtor filed this Plan simultaneously with its bankruptcy petition because it believes an efficient and expeditious reorganization is necessary to put the Reorganized Debtor on more stable financial footing and enable it to compete in the marketplace.  As referenced in the First Day Declaration, the Debtor previously brought J. Robinson back on board to "right the ship" operationally.  J. Robinson's leadership has already begun mending relationships with vendors and employees, brought cash flow under control, and retained appropriate professionals, while he is not taking a salary.

**D.      Liquidation Analysis**

To confirm the Plan, the Bankruptcy Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached hereto as Exhibit "A" and incorporated herein for all purposes. Debtor's plan pays out five years of net disposable income as required of Subchapter V debtors in the aggregate amount of $425,000 over the life of the Plan in quarterly payments to the holders of allowed general unsecured claims. The Plan also provides for the distribution of the Waterfall, if any, to the holders of allowed general unsecured claims.  If Bentoli were liquidated, there would be no funds available for distribution to unsecured creditors, the vendors would be unpaid, all employees would be let go and the company built by the Robinson family would be lost.

**E.      Ability to make future plan payments and operate without further reorganization**

Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan Payments and to support its business. Debtor has provided detailed projected financial information attached hereto as Exhibit "B" and incorporated herein for all purposes.

The final Plan Payment is expected to be paid on or before the fifth anniversary following the date that the first payment is due under the Plan.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**ARTICLE I.**
**SUMMARY**

This Plan of Reorganization under Chapter 11 of the Bankruptcy Code  proposes to pay the Allowed Claims of the Debtor out of cash flow from operations.

This Plan provides for:

| |
|---|
| Two Classes of Secured Claims. |
| One Class of General Unsecured Claims. |
| One Class of Equity Holder Interests |

There are no Allowed Claims entitled to priority under § 507(a) of the Code that require classification under § 1123(a)(1) of the Code. Non-priority unsecured creditors holding Allowed Claims will receive distributions of the net disposable income in the aggregate amount of $425,000. The Debtor is reluctant to ascribe a range of distributions to the holders of allowed general unsecured claims given the disputed nature of any claims that may be held by Palencia , if any, along with the matters related to the Palencia Adversary, and the SPB Claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Claimants' rights may be affected. Each claimant should read these papers carefully and discuss them with their attorney, if they have one. If a claimant does not have an attorney, they may wish to consult one.**

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**Classified Claims:**

| Class | Description | Impaired? | Voting? |
|---|---|---|---|
| 2.01. Class 1. | Secured Claim of SBA | N | **N** |
| 2.02. Class 2. | Pre-Petition Secured Claim of Liminality | Y | **Y** |
| 2.03. Class 3. | General Unsecured Creditors | Y | **Y** |
| 2.04. Class 4. | Equity Holders | Y | **N** |

## ARTICLE III.
## TREATMENT OF ADMINISTRATIVE EXPENSES,
## PRIORITY TAX CLAIMS, AND COURT FEES

**3.01.  Unclassified claims.** Under § 1123(a)(1), administrative expense claims and Priority Tax Claims are not in classes.

**3.02.  Administrative expense claims.** Although not classified, the Professionals who have provided services to the Debtor during the pendency of this Chapter 11 case are entitled to administrative claim treatment. These claims do not include other administrative priority claims allowed under 11 U.S.C. § 503. Those will be paid in the ordinary course as priority claims under 11 U.S.C. § 507(a), but to the extent they may not be paid in the ordinary course of business, they are listed here. The following professional fees are the fees estimated to have accrued prior to

confirmation of Debtor's bankruptcy case and shall be paid within 60 days of the Effective Date unless Debtor enters into other arrangements with the Professional:

| | |
|---|---|
| The Smeberg Law Firm PLLC (Attorneys) | $25,000.00 |
| BDF Law Group | $35,000.00 |
| Harney Partners (Advisory Services) | $25,000.00 |

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 Case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 Case. Any other allowed costs and expenses of administration of the Debtor's Chapter 11 Case will also be entitled to administrative treatment. The anticipated administrative expenses of the Debtor is moderate for a case of this size and complexity.

**3.03. Priority tax claims.** Each Holder of a Priority Tax Claim will be paid, consistent with § 1129(a)(9)(C) of the Code, as follows:

a. Debtor does not anticipate taxes owed to the Internal Revenue Service ("**IRS**"); however, if taxes are owed to the IRS as of the Confirmation Date, then the amounts owed shall be either paid on the Effective Date or amortized over 48 monthly installments at the IRS interest rate applicable on the Confirmation Date. The first payment shall be made on the 15th day of the first month following the Effective Date.

b. Debtor does not anticipate personal property taxes owed to any taxing authority; however, if taxes are owed to any taxing authority for personal property taxes as of the Confirmation Date, then the amounts owed shall be either paid on the Effective Date or amortized over 48 monthly installments at 12% interest. The first payment shall be made on the 15th day of the first month following the Effective Date.

**3.04. Treatment of DIP Claim.** Liminality, in its capacity as the post-petition lender, has agreed to have its claim treated in Class 2 below.

**3.05. Bastrop County Tax Claim**. To the extent the claim of The County of Bastrop, Texas, collecting property taxes for Elgin Independent School District, for 2023 taxes in the amount of $2,768.74 becomes an allowed claim, the Reorganized Debtor will pay same in the ordinary course of business. If the Reorganized Debtor does not pay such allowed claim prior to the state law delinquency date, penalties and interest pursuant to the Texas Tax Code shall accrue. Bastrop's statutory liens are retained until payment in full of any allowed claim, including accrued interest and penalties as applicable. If the Debtor or Reorganized Debtor is successful in protesting the 2023 tax assessment or the bankruptcy court disallows the claim, The County of Bastrop, Texas shall promptly withdraw its claim.

**3.06. Statutory fees.** All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date.

**3.07.   Prospective Quarterly Fees:** To the extent applicable, all quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

**3.08.   Post-Effective Date Fees and Expenses**. Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without any further notice or application to or action, order, or approval of the Court, pay in Cash the reasonable, actual, and documented legal, professional, or other fees and expenses related to implementation of the Plan and consummation incurred on or after the Effective Date by the Professionals. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Court.

## ARTICLE IV.
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01**.   Claims and interests shall be treated as follows under this Plan:

| Class | Description | Treatment |
|-------|-------------|-----------|
| 1 | Secured Claim of the SBA | The Class 1 Claim consists of the Secured Claim of the Small Business Administration ("*SBA*") in the amount of $161,308 (the "*SBA Obligations*") pursuant to a promissory note dated May 28, 2020 (the "*SBA Note*"). As of the Filing Date, past due amounts of $5,800 were owed (the "*Past-Due Amounts*"), but the SBA Obligations had not been accelerated. Pursuant to the DIP Motion (if granted by the Court), Bentoli will pay, in Cash, the Past-Due Amounts to the SBA, and then will resume making monthly payments as required under the SBA Note.<br><br>The SBA shall retain all of its existing Liens over Debtor's assets.<br><br>The Class 1 Claim is unimpaired under the Plan and shall not vote on the Plan. |
| 2 | Secured Claim of Liminality | The Class 2 Claim consists of the Liminality Secured Claim in the amount of approximately $400,000 secured by a pre-petition Lien (subject only to the prior liens of the SBA, if any) over all Debtor's assets as set forth in the various instruments securing its claim, including its Cash, accounts receivable and |

| | | |
|---|---|---|
| | | trademarks, as well as the stock ownership of Robinson Sr. in the Debtor (collectively, the "***Liminality Collateral").***<br><br>Liminality shall receive payments that will fully amortize the Liminality Amortizing Debt over a seven (7) year period until paid in full at eight percent interest. Liminality shall retain all of its Liens in the Liminality Collateral.  The first payment shall be due and payable on the 15th day of the first month following the Effective Date. The Liminality Deferred Debt will accrue interest at eight percent (8%) per annum, but no payments will be paid on the Liminality Deferred Debt until the earlier to occur of (i) satisfaction in full of the Plan Payments, and (ii) the fifth anniversary following the date that the first payment is due under the Plan.  The treatment of the Liminality Claim shall be set forth in the Liminality Exit Loan Documents included in the Plan Supplement and approved by the Bankruptcy Court and will contain customary events of default, including an event of default, including, if the holders of Interests as the Filing Date changes by more than five percent.<br><br>The foregoing summary is qualified in its entirety by the Liminality Exit Loan Documents that are incorporated herein by reference.  The Class 2 Claim is deemed to be impaired under the Plan and shall be entitled to vote on the Plan |
| 3 | Non-priority general unsecured creditors | The Class 3 Claims consist of the Holders of General Unsecured Claims.<br><br>Notwithstanding anything to the contrary set forth in the Plan, the Plan Supplement, or any of the Liminality Exit Loan Documents, Debtor shall pay a total amount of $425,000 ("***Unsecured Claim Fund***") to Holders of Allowed Class 3 Claims.  Debtor shall make quarterly payments as set forth in the plan projections  ("***Quarterly Payments***") to the Allowed Class 3 claimants, which shall be paid Pro-Rata toward the Allowed Class 3 Claims.  Quarterly Payments shall begin April 15, 2024, and continue each quarter on the 15th day of the first month of the quarter until the final payment is made.  The Quarterly Payments may be supplemented by the Waterfall, if, as, and when available.<br><br>If either the Palencia Adversary or Maresma Adversary (unless dismissed pursuant to the Maresma Compromise) is pending |

| | | |
|---|---|---|
| | | on the date the first Quarterly Payment is due, then the Quarterly Payments shall be made to the Disbursing Agent, who will maintain the funds in his IOLTA account until both such adversary proceedings have concluded with final unappealable orders.  Upon entry of final unappealable orders in such adversary proceedings, the Disbursing Agent shall distribute all funds to the Holders of Allowed General Unsecured Claims Pro-Rata, and Debtor shall continue making all Quarterly Payments to the Disbursing Agent until the Holders of Allowed General Unsecured Claims are paid in full or the entire Unsecured Claim Fund has been distributed.  The Class 3 Claims are deemed to be impaired under the Plan and shall vote on the Plan to the extent a Class 3 Claim is not a Disputed Claim. |
| 4 | Equity Holders | On the Effective Date, all shares in the Reorganized Debtor shall revest with the holders of Interests in the same number as they existed at the time of the Filing Date. Equity Holders are deemed unimpaired and not entitled to vote on the Plan. |

## ARTICLE V.
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01.   Disputed Claim.** A Disputed Claim is a Claim that has not been Allowed or Disallowed by a final non-appealable order, and as to which either:

(i)      a proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection;

(ii)     no proof of Claim has been filed, and the Debtor has scheduled such Claim as disputed, contingent, or unliquidated;

(iii)    Disputed Claims shall not vote on the Plan.

**5.02.   Delay of distribution on a Disputed Claim.** No distribution will be made on account of a Disputed Claim unless such Claim is Allowed by a final non-appealable order.

**5.03.   Settlement of Disputed Claims.** Debtor will have the power and authority to settle and compromise a Disputed Claim with court approval and compliance with section 1123 (b)(3)(A) and Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**5.04.   Claims Disallowed Pursuant to Section 502(e)(1)(B).** To the extent that a contingent claim is disallowed as of the Effective Date pursuant to section 502(e)(1)(B) of the

Bankruptcy Code but would subsequently be considered an allowed claim pursuant to section 509 of the Bankruptcy Code, such claimant shall be deemed to hold an Allowed Claim as of the date of such determination by the Reorganized Debtor.

**5.05.   Maresma Compromise.**  The Maresma Compromise is an element of the Plan and includes the following: (i) the withdrawal of the Maresma Asserted Claims in the total amount of $743,750.02, (ii) the dismissal of the Maresma Adversary with prejudice, and (iii) the other matters included in the Maresma Compromise.

## ARTICLE VI.
## PROVISIONS FOR EXECUTORY CONTRACTS,
## UNEXPIRED LEASES AND RETENTION OF ACTIONS

**6.01.   Assumed executory contracts and unexpired leases.**

     a.     Debtor intends to assume four executory subscription-based contracts for software services.  The assumed contracts are as follows:

     (1)     Executory contract with AT&T for Voice Over IP services.

     (2)     Executory contract with Fishbowl Inventory for inventory software subscription services.

     (3)     Executory contract with Intuit for financial software subscription services.

     (4)     Executory contract with UpCurve Cloud for CRM services.  (Collectively 1-4 shall be referred to as "***Assumed Agreements***")

     b.     Unless assumed prior to the Effective Date, the Assumed Agreements shall be deemed assumed as of the Effective Date.  Any defaults under the Assumed Agreements shall be cured when assumed.

**6.02.   Rejected executory contracts and unexpired leases:** Real property lease with 116 Hoxie, LLC, of 116 Hoxie Street, Coupland, Texas 78615.

**6.03.   Claims Based upon Rejection of Executory Contracts or Unexpired Leases**. All Claims arising out of the rejection of executory contracts and unexpired leases must be filed with the Bankruptcy Court and served upon the Debtor and its counsel within thirty (30) days after the earlier of (a) the date of entry of an order of the Bankruptcy Court approving such rejection or (b) the Confirmation Date. Any such Claims not filed within such times shall be forever barred from assertion against the Debtor, its Estate, and property.

**6.04.   Reservation of Rights**.  Nothing contained in the Plan shall constitute an admission by the Debtor that any contract or lease is, in fact, an Executory Contract.

8

**6.05.   Retention of Causes of Action:**  Debtor retains all actions:

a.  to avoid, set aside, or recover any payment or other transfer made to any party under Sections 547, 548, 549, and/or 550 of the Bankruptcy Code;

b.  to avoid, set aside, or recover any payment or other transfer made to any party under any applicable State law(s);

c.  to avoid or set aside any interest of a party in property under Section 544 of the Bankruptcy Code;

d.  to collect any insider or non-insider loans or receivables;

e.  to collect from any officer, director, shareholder, member, manager, or insider for breach of their duties to the Debtor or its creditors accruing pre- or post-bankruptcy filing;

f.  for claims the estate has against insiders or third parties that accrued before the bankruptcy case filing date, during the bankruptcy, or after the case is confirmed.

g.  all Claims against Palencia - including, but not limited to, the claims asserted in the Palencia Adversary and all matters regarding the SPB Claims.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01.   Means for Funding the Plan.** The Plan will be funded through Debtor's continued operations and through the use of cash collateral and any post-petition funding from Liminality. Debtor's continued operations should be sufficient to enable the Reorganized Debtor to operate profitably.

**7.02.   Officers**.  Debtor's directors are Robinson, Sr. and Robinson, Jr. Robinson Sr. is the President, Robinson Jr. is the Secretary, and J. Robinson is the Treasurer and CEO (collectively "*Officers*").

**7.03.   Administrative Convenience**.  Debtor may pay any Allowed Claim that is less than $2,000 in full after the Effective Date out of convenience for the Debtor.  The holder of any Allowed General Unsecured Claim in excess of $2,000 may accept treatment as an Administrative Convenience Claim by accepting $2,000 as payment in full of the Allowed Claim by indicating its acceptance on its Ballot.  Notwithstanding this Section 7.03, any Creditor that files an objection to the Plan is precluded from Administrative Convenience treatment.

**7.04.   General Settlement of Claims.** Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, which distributions and other benefits shall be irrevocable

9

and not subject to challenge upon the Effective Date, the provisions of the Plan, and the distributions and other benefits provided hereunder, shall constitute a good-faith compromise and settlement of all Claims against the Debtor, including all controversies relating to the contractual, legal, and subordination rights that a holder of an Allowed Claim against the Debtor's estate may have with respect to such Allowed Claim or any distribution to be made on account of such Allowed Claim.

The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims and controversies, as well as a finding by the Court that all such compromises and settlements are in the best interests of the Debtor, its Estate, and holders of Claims and is fair, equitable, and reasonable.

**7.05. Discharge of Sub V Trustee.** Upon Substantial Consummation of the Plan, the Subchapter V Trustee shall be discharged from his duties as Subchapter V Trustee. Upon discharge of his status as Subchapter V Trustee, Michael Colvard, individually, shall become the Disbursing Agent on terms and conditions mutually acceptable to the Debtor and Mr. Colvard. Upon completion of the Palencia litigation or by agreement of Palencia and Debtor, Mr. Colvard may be released by Debtor as the Disbursing agent upon 30 days written notice. If Colvard is unable or unwilling to serve as the Disbursing Agent, or Colvard and Debtor cannot agree on the Disbursing Agent terms, then any person or entity agreed to by Palencia and Debtor may serve as the Disbursing Agent.

    a. To the extent that the Debtor and Mr. Colvard agree that Mr. Colvard shall act as Disbursing Agent, then during the payment period, Mr. Colvard shall make all payments of distributions to creditors from the Plan payments other than post-petition cured monthly mortgage payments. Such remittances shall occur no less frequently than fifteen (15) days after the first day of each month following receipt of a Plan payment from the Reorganized Debtor following finalization of claims objections. Mr. Colvard shall make such distributions out from an account to be established by Mr. Colvard at an institution on the approved U.S. Trustee depository list account, which shall be maintained by Mr. Colvard for the duration of the payment period until Plan consummation following the final payment required under the Plan (the "***Disbursing Agent's Account***").

    b. Disbursements to Allowed Claimants. As soon as is reasonably practicable after the Effective Date and following claims objections resolutions, Mr. Colvard shall initiate disbursement of Plan payments from the Disbursing Agent's Account, less amounts reserved for Mr. Colvard's fees and expenses (as agreed upon by the Debtor and Mr. Colvard), to the holders of Allowed Claims in the provisions provided under the confirmed Plan, on a pro rata basis based on the

total amount of Allowed Claims. For the avoidance of doubt, the disbursement to holders of Allowed Claims distribution. The Reorganized Debtor shall file any claim objection within 30 days after the Effective Date – and confirm all Allowed Claims to be paid under the Plan.

c. Addresses for Disbursements. Disbursements shall occur by check drawn on the Disbursing Agent's Account and may be delivered by Mr. Colvard to (i) the address for payment set forth on a proof of claim filed by the Holder or its authorized agent, (ii) at the address set forth in any written notices of change of address delivered to Mr. Colvard at Michael G. Colvard, Martin & Drought, P.C., 112 East Pecan Street, Suite 1616, San Antonio, TX 78205, or (iii) if the Holder has not filed a proof of claim or otherwise provided Mr. Colvard with notice of its address, in the address set forth in the applicable schedule filed by the Reorganized Debtor in this case. If any distribution to a Holder of an Allowed Unsecured Claim is returned to Mr. Colvard as undeliverable, no further distributions shall be made to such Holder unless and until Mr. Colvard is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all current due missed distributions shall be made to such Holder as soon as practicable. Undeliverable distributions shall remain in the possession of Mr. Colvard until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends or other accruals of any kind. If, despite reasonable effort, Mr. Colvard is unable to obtain the information necessary to deliver a distribution within six months following the return of the undeliverable distribution, Mr. Colvard shall be authorized to treat such Holder's current and future claims as an Unclaimed Distribution (defined below).

d. No Fractional Disbursements. Notwithstanding anything contained herein to the contrary, payments of fractional dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding down of such fractions. Further, if the actual monthly distribution claim as allowed claim is less than $100.00 no payment to a creditor shall occur unless the distribution in excess of $100.00 on or before the next annual payment date following the Effective Date

e. Time Bar to Cash Distributions. Holders of Allowed Claims shall have 120 days from the date of issuance to negotiate a check on account of distribution. If a Holder fails to negotiate a disbursement check within this 120-day period, Mr. Colvard, as disbursing agent, shall have the right to void the check, and any current and will be reduced in an amount equal to the fees and costs incurred by Mr. Colvard and allowed in accordance with subparagraph (k) herein. The Reorganized Debtor shall provide a list of claims, including Allowed Claims and disputed claims to Mr. Colvard on or about the same time when funds are delivered directing Mr. Colvard which claims are "allowed claims" entitled to distribution, which claims are unresolved requiring Mr. Colvard to withhold

funds as required in subparagraph (e) herein and which claims constitute disallowed claims entitled to no future claims of such Holder to the Dividend shall be treated as an Unclaimed Distribution (defined below).

f. Unclaimed Distributions and Reversion. Any distribution made by Mr. Colvard to a Holder of an Allowed Claim under this paragraph that is undeliverable for more than six months for lack of address, cannot be made on account of such Holder's failure to comply with the Withholding Requirements set forth in subparagraph (e) above, or has not been negotiated within 120 days from the date of issuance on the distribution check shall become an "Unclaimed Distribution." Unclaimed Distributions shall be deemed unclaimed property under section 347(d) of the Bankruptcy Code and shall revest with the Reorganized Debtor and held by Mr. Colvard within the Disbursing Agent's Account. The Claim of any Holder or its successors with respect to such property shall be cancelled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary. Unclaimed Distributions shall be distributed by Mr. Colvard to the remaining Holders of Allowed Claims, which distribution shall be effectuated through the subsequent distributions provided for under the Plan as if the Claim underlying such Unclaimed Distribution had been disallowed.

g. No Liability. Following entry of the Confirmation Order, any disbursements made by Mr. Colvard on account of a Claim are deemed authorized disbursements, and Mr. Colvard shall have no liability for these disbursements. Mr. Colvard's obligations are limited to acting as the disbursement agent under the Plan, and Mr. Colvard shall have no liability to any person in the event that the Reorganized Debtor fails to timely deliver payments to Mr. Colvard, or otherwise fails to perform its obligations under the Plan. Mr. Colvard shall have no obligation to disburse Dividend Payments unless and until he determines that there are adequate funds in the Disbursing Agent's Account to cover a distribution to Holders, net of Mr. Colvard's fees and costs. Mr. Colvard shall not have any obligations to pursue and/or manage the Reorganized Debtor's pursuit of Causes of Action.

h. Notices. Mr. Colvard may limit notice of any and all reports, documents, pleadings or other filings related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. Mr. Colvard shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

i. Post-Confirmation Fees and Expenses of the Sub V Trustee. Mr. Colvard shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Disbursing Agent under this paragraph from the Plan Payments

in the amount of $400 per month for postconfirmation administration of plan obligations, and in addition thereto, shall be entitled to reasonable attorney's fees in the event of that other non-administrative post-confirmation attorney services are required.

j.  Distributions by Mr. Colvard on Disputed Claims. Except as otherwise provided in the Plan, no partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. Unless otherwise agreed to by the Reorganized Debtors or as otherwise specifically provided in the Plan, a Holder who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Unsecured Claims which are not disputed. Until a disputed claim is resolved, payment distributions to claimants holding disputed claims will be retained by Mr. Colvard subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim Mr. Colvard will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, Mr. Colvard will make withheld funds available to allowed claim holders within the next payment period.

## ARTICLE VIII.
## GENERAL PROVISIONS

**8.01.  Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan and supplemented by the following definitions:

**8.01.1**  *Administrative Claim* shall mean any Claim that is defined in Section 503(b) of the Bankruptcy Code as being an "administrative expense" within the meaning of such section and referenced in Bankruptcy Code Section 507(a)(1) including, without limitation, the actual necessary costs and expenses of preserving the Debtor's estate and operating the business of the Debtor, including wages, salaries, or commissions for services rendered after the commencement of the case, compensation for legal and other services and reimbursement of expenses. Administrative Claim shall include any claim allowed or awarded under Bankruptcy Code Sections 330(a) or 331, and all fees and charges assessed against the estate of the Debtor under title 28 of the United States Code.

**8.01.2**  *Administrative Expense Bar Date* means the date that is fourteen (14) calendar days after the Confirmation Hearing.

**8.01.3**  *Affiliate* shall have the meaning set forth in Section 101(d) of the Bankruptcy Code.

**8.01.4**  *Allowed Claim or Allowed Interest* shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or

(b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as to amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending, or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Tax Claim as the context provides.

**8.01.5** *Ballot* means the form(s) distributed to holders of Claims entitled to vote on the Plan on which to indicate their acceptance or rejection of the Plan.

**8.01.6** *Bankruptcy Code* shall mean the Bankruptcy Code, 11 U.S.C. §101 *et seq*., as it existed on the Filing Date.

**8.01.7** *Bankruptcy Court* shall mean the United States Bankruptcy Court for the Western District of Texas, Austin Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

**8.01.8** *Bankruptcy Estate* shall mean all of the assets owned by the Debtor and its estate.

**8.01.9** *Cash* shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

**8.01.10** *Causes of Action* means any and all of the Debtor's or the Debtor's Estate's actions, claims, demands, rights, defenses, counterclaims, suits and causes of action, whether known or unknown, in law, equity or otherwise. A Cause of Action shall not, under any circumstances, be waived as a result of the failure to describe such Cause of Action with specificity in the Plan.

**8.01.11** *Chapter 11 Case* means the case pending for the Debtor pursuant to chapter 11 of the Bankruptcy Code in the Court.

**8.01.12** *Claim* shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

**8.01.13** *Class* shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article 4.

14

**8.01.14** *Confirmation Date* shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

**8.01.15** *Confirmation Hearing* shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

**8.01.16** *Confirmation Order* shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

**8.01.17** *Convenience Claim* shall mean any General Unsecured Claim that is Allowed in an amount of two thousand dollars ($2,000) or less; provided, however that (1) any Claim that was Allowed in excess of two thousand dollars ($2,000) may not be subdivided into multiple Claims of two thousand dollars ($2,000) or less for purposes of receiving treatment as a Convenience Claim, and (2) Claims in the same Class held by a Claimant shall be aggregated for purposes of determining whether such Claims are eligible to be Convenience Claims.

**8.01.18** *Creditor* shall mean any Person holding a Claim.

**8.01.19** *Debtor* shall have the meaning set forth in the preamble to the Plan.

**8.01.20** *DIP Motion* shall mean the Motion For Interim and Final Orders (A) Authorizing Debtor to (I) Obtain Debtor in Possession Financing, and (II) Use Cash Collateral; and (B) Determining Adequate Protection and Superpriority Claims and Liens filed by the Debtor on October 1, 2023.

**8.01.21** *Disbursing Agent* shall mean the Debtor or the Subchapter V Trustee.

**8.01.22** *Disallowed Claim* shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

**8.01.23** *Disputed Claim* shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in Debtor's schedules of liabilities as disputed, contingent, or unliquidated, or listed in this Plan as disputed; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

**8.01.24** *Effective Date* shall mean the first day of the month following the first date that the Confirmation Order is final and no longer subject to appeal.

**8.01.25** *Enjoined Party* means (i) any Person who has held, holds, or may hold a Claim against the Estate (whether or not proof of such Claim has been filed and whether

15

or not such Person votes in favor of, against or abstains from voting on the Plan or is presumed to have accepted or deemed to have rejected the Plan), (ii) any Person that has appeared and/or filed any motion, objection, or other pleading in this Chapter 11 Case regardless of the capacity in which such Person appeared in the Chapter 11 Case, (iii) any Person that was an Insider of the Debtor on or before the Filing Date under Section 101(31) of the Bankruptcy Code, including, without limitation, any Person that was a non-statutory Insider, (v) any Person that, after the Effective Date, is an Insider or Affiliate of the Debtor, and (vi) the Related Persons of each of the foregoing.

**8.01.26** *E. Robinson* shall mean Edward Robinson.

*8.01.27* *Estate* means the estate of the Debtor in the Chapter 11 Case, as created pursuant to section 541 of the Bankruptcy Code.

**8.01.28** *Exculpated Party* means the Debtor.

**8.01.29** *Executory Contracts* shall mean any Pre-Petition Unexpired Lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

**8.01.30** *Filing Date* shall mean October 1, 2023, the date Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

**8.01.31** *Final Order* shall mean an order or judgment of a Court which has become final in accordance with law, and which has not been stayed pending appeal.

**8.01.32** *General Unsecured Claim* shall mean either (i) a Claim that is not secured by a Lien, security interest or other charge against or interest in property in which Debtor has an interest or which is not subject to setoff under Section 553 of the Bankruptcy Code; (ii) a Claim that is not a Secured Claim; (iii) a Claim that is not an Administrative Claim; (iv) a Claim that is not a Priority Tax Claim; or (v) a Claim that is not otherwise entitled to priority under Bankruptcy Code Sections 503 or 507.

**8.01.33** *Governmental Unit* shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

**8.01.34** *Holder* shall mean the owner or Holder of any Claim or Interest.

**8.01.35** *Interest* shall mean an Interest scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) as reflected in the books and records of the Debtor as of the Filing Date.

**8.01.36** *Insider* has the definition ascribed to it under the Bankruptcy Code.

**8.01.37** *J. Robinson* shall mean John Robinson

16

**8.01.38** ***Legal Proceedings*** means a proceeding before a tribunal constituted by law, including a court, an administrative body or commission, or an administrative law judge or hearing officer.

**8.01.39** ***Lien*** shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

**8.01.40** ***Liminality*** shall mean Liminality Ventures, LLC, a Texas limited liability company.

**8.01.41** ***Liminality Amortizing Debt*** shall mean the obligations of Bentoli to Liminality consisting of the up to $400,000 in principal for the secured loan funded effective as of November 30, 2023, amortizing over 7 years with the first payment being March 2024.

**8.01.42** ***Liminality Claim*** shall mean the Claim of Liminality comprised of the (i) Liminality Amortizing Debt, and (ii) Liminality Deferred Debt.

**8.01.43** ***Liminality Deferred Debt*** shall mean the obligations of Bentoli to Liminality, as more fully described in the Liminality Exit Loan Documents, in excess of the Liminality Amortizing Debt.

**8.01.44** ***Liminality Exit Loan Documents*** shall mean the documents included in the Plan Supplement that will govern the contractual relationship between Liminality and the Debtor or the Reorganized Debtor, as the case may be.

**8.01.45** ***Maresma Adversary*** shall mean the adversary related to this Chapter 11 Case styled *Bentoli, Incorporated v. Frank Maresma and ACE Sales Corp. d/b/a SanaCare*.

**8.01.46** ***Maresma Asserted Claims*** shall collectively mean the proofs of claims filed by the Maresma Entities with the Bankruptcy Court on November 17, 2023, as follows: Frank Maresma (Claim No. 14 in the amount of $665,000.00), Ace Sales Corp. d/b/a SanaCare (Claim No. 13 in the amount of $43,750.02) and Madfrabia International Corp. (Claim No. 12 in the amount of $35,000.00) in the total amount of $743,750.02.

**8.01.47** ***Maresma Compromise*** shall mean that certain settlement between the Maresma Entities, the Debtor and the other parties included in the documents that implement such compromise to be filed with the Bankruptcy Court prior to the Confirmation Hearing [Dkt Nos. 140, 141 and 142] which are incorporated herein by reference.

**8.01.48** ***Maresma Entities*** shall mean collectively, Frank Maresma, Ace Sales Corp. d/b/a SanaCare and Madfrabia International Corp.

**8.01.49** ***Motion to Honor*** shall mean the *Motion Pursuant to Sections 105(A), 363(B), and 503(B)(9) of the Bankruptcy Code to Authorize Debtor to Honor Pre Petition Checks Nunc Pro Tunc* filed by the Debtor on November 11, 2023 [Dkt. 88].

17

**8.01.50** *Palencia Adversary* shall mean the adversary proceedings related to this Chapter 11 Case styled *Bentoli Incorporated v. Alexander Palencia*, Adv. No. 23-01024.

**8.01.51** *Person* shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**8.01.52** *Plan* shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

**8.01.53** *Plan Payments* shall mean monthly or quarterly payments made by the Debtor.

**8.01.54** *Plan Supplement* means the compilation of documents and forms of documents, all of which may be amended, modified, replaced and/or supplemented from time to time, to be filed with the Bankruptcy Court on or before the date that is seven (7) calendar days prior to the Confirmation Hearing. Any reference to the Plan Supplement in this Plan shall include each of the documents referenced therein.

**8.01.55** *Pre-Petition Unexpired Lease(s)* shall mean any lease existing as of the Filing Date between the Debtor and any Entity or Person.

**8.01.56** *Priority Tax Claim* shall mean any claim that is defined in Section 507(a)(8) of the Bankruptcy Code.

**8.01.57** *Professional Fee Claim* means a Professional's Claim for compensation or reimbursement of costs and expenses pursuant to sections 327, 328, 330, 331, 503(b) (other than 503(b)(4)) or 1103 of the Bankruptcy Code for services rendered to the Debtor on and after the Filing Date, but before and including the Effective Date.

**8.01.58** *Professionals* shall mean all professionals employed in this case pursuant to Section 327 or 1103 of the Bankruptcy Code.

**8.01.59** *Pro-Rata* shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class.

**8.01.60** *Related Person* means, with respect to any Person, such Person's predecessors, successors, assigns (whether by operation of law or otherwise), and each of their respective present, future, or former officers, directors, employees, managers, managing members, members, financial advisors, attorneys, accountants, investment bankers, consultants, professionals, advisors, shareholders, principals, partners, subsidiaries, divisions, management companies, heirs, agents, and other representatives, in each case solely in their capacity as such.

**8.01.61** *Released Party* means each of the following solely in its capacity as such: (i) the Debtor; (ii) J. Robinson; (iii) Robinson Sr.; (iv) Robinson Jr.; (v) E. Robinson; (vi) the Professionals retained by the Debtor in the Chapter 11 Case;

(vii) Liminality; (viii) the Professionals retained by Liminality; and (ix) the Related Persons of each of the parties listed in (i) through (viii). For the avoidance of doubt, the term "Released Party" does not include Holders of Claims who do not vote on the Plan or who do not elect to opt in to the releases on their Ballot.

**8.01.62** *Releasing Party* means the Debtor and the Affiliates of the Debtor. For the avoidance of doubt, the term "Releasing Party" does not include Holders of Claims who are not entitled to vote on the Plan, who do not vote on the Plan, or who do not elect to opt in to the releases on their Ballot.

**8.01.63** *Removed Case* shall mean the case captioned *Alexander Palencia v. Bentoli Inc. et. al.* initiated in Travis County District Court under Cause No. D-1-GN-22-006655 and removed to the Bankruptcy Court having been assigned adversary proceeding number 23-01035-smr.

**8.01.64** *Reorganized Debtor* shall mean the Debtor, from and after the Effective Date.

**8.01.65** *Robinson Jr.* shall mean William Robinson Jr.

**8.01.66** *Robinson Sr.* shall mean William Robinson Sr.

**8.01.67** *Secured Claim* shall mean a claim secured by a Lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

**8.01.68** *SPB Claims* shall mean the potential claims against the Squire Patton Boggs ("**SPB**") law firm arising from, among other things, the acts, omissions, breaches of loyalty, and conflicts of interest in representing Alexander Palencia, a former control person and director of Bentoli, in matters adverse to and detrimental to the interests of the Debtor, SPB's client.

**8.01.69** *Substantial Consummation* shall have the meaning set forth in section 1101(2) of the Bankruptcy Code.

**8.01.70** *Waterfall* shall have the meaning set forth in Exhibit C attached to the Plan.

**8.02** **Severability**. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.03** **Binding Effect**. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.04    Captions**. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.05    Controlling Effect**. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**8.06    Failure to Timely Submit Ballot.**  If you fail to timely submit your Ballot, you will be deemed to accept the Plan.

**ARTICLE IX.**
**DISCHARGE**

**9.01.    Discharge.**

**9.01.01**    If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i)    imposed by this Plan; or

> (ii)    to the extent provided in § 1141(d)(6).

**9.01.02**    If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the Bankruptcy Court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

> (i)    on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

> (ii)    excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**9.02.    Modification of the Plan.** Debtor may propose amendments or modifications to its Plan at any time prior to the date of the entry of the Confirmation Order, with leave of the Bankruptcy Court, and upon proper notice to the parties in interest.  After the date of the Confirmation Order, Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of Creditors, remedy any defects or omissions, or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purpose and effect of this Plan.

**9.03.    Effect of Confirmation of the Plan.**

      **9.03.1**    **Legally Binding Effect.**  The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, guaranty claims or any type of successor liability based on acts or omissions of the Debtor.

      **9.03.3**    **Continuation of Anti-Discrimination Provisions of Bankruptcy Code**. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, or another Person with whom the Debtor has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

**ARTICLE X.**
**DEFAULT**

      **10.01. Default.**  Upon default by the Reorganized Debtor, Creditors are required to provide written notice of such default to the Reorganized Debtor and Debtor's counsel, the Smeberg Law Firm, PLLC, by certified mail, return receipt requested, and by regular first class mail, and the Reorganized Debtor shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. If the Reorganized Debtor fails to cure within the thirty (30) day cure period provided herein, Creditors shall be allowed to foreclose their Liens without further notice of hearing before the Bankruptcy Court. The Reorganized Debtor shall be entitled to three (3) notices of default for each calendar year. On the fourth (4th) notice of default for a calendar year, Creditors shall be allowed to foreclose their Liens without further notice of hearing before the Bankruptcy Court or move to have the case converted to a case under Chapter 7.

      **10.02. Vesting of Estate Property and Effect of Default.**  On the Effective Date, title to all assets, causes of action against Insiders and third parties, and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual Secured Claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all Plan Payments to Creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

## ARTICLE XI.
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVENESS

**11.01 Conditions to Confirmation**. It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied or waived.

a.       The Motion to Honor shall have been approved by the Bankruptcy Court.

b.       The Maresma Compromise shall have been approved by the Bankruptcy Court.

c.       The Bankruptcy Court shall have entered the Confirmation Order in form and substance reasonably acceptable to the Debtor.

d.       The Plan must be in form and substance acceptable to the Debtor.

e.       All documents necessary to implement the Plan must be in a form and substance acceptable to the Debtor.

**11.02 Conditions to Effective Date**. The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied:

a.       The Confirmation Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Debtor.

b.       All other actions, documents, and agreements necessary to implement this Plan shall have been effected or executed.

c.       No stay of the Confirmation Order shall be in effect.

**11.03 Waiver of Conditions**. Notwithstanding the foregoing, the Debtor reserves the right to waive the occurrence of the conditions precedent to the (a) Confirmation of the Plan and (b) Effective Date. Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the confirmation of this Plan and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case and this Plan, to the fullest extent permitted by law, including jurisdiction to:

a.       hear and determine any and all objections to the allowance of Claims;

b.      hear and determine any and all motions to estimate Claims at any time, regardless of whether the Claim to be estimated is the subject of a pending objection, a pending appeal, or otherwise;

c.      hear and determine any and all motions to subordinate Claims at any time and on any basis permitted by applicable law;

d.      hear and determine all Administrative and Professional Fee Claims;

e.      hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any Claim or the liquidation of any Claims arising therefrom;

f.      hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case;

g.      enter such orders as may be necessary or appropriate in aid of the implementation hereof and to execute, implement, or consummate the provisions hereof and all contracts, instruments, releases, and other agreements or documents created in connection with this Plan, or the Confirmation Order;

h.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan and all contracts, instruments, and other agreements executed in connection with this Plan;

i.      hear and determine any request to modify this Plan or to cure any defect or omission or reconcile any inconsistency herein or any order of the Bankruptcy Court;

j.      issue and enforce injunctions or other orders, or take any other action that may be necessary or appropriate to restrain any interference with or compel action for the implementation, or enforcement hereof or the Confirmation Order;

k.      enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

l.      hear and determine any matters arising in connection with or relating hereto, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, or the Confirmation Order;

m.      enforce all orders, judgments, injunctions, releases, exculpation, indemnification and rulings entered in connection with the Chapter 11 Case;

n.      recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

23

o.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

p.     hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge, if any;

q.     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code;

r.     hear and determine all matters related to the Maresma Adversary (unless settled pursuant to the Maresma Compromise), the Palencia Adversary, the Removed Case, and any proceedings related to the SPB Claims; and

s.     enter a final decree closing the Chapter 11 Case.

**ARTICLE XIII.**
**MISCELLANEOUS PROVISIONS**

**13.01  Bar Date for Certain Claims**.

**13.01.01.  Administrative Claims**. The Confirmation Order shall establish an Administrative Expense Bar Date for the filing of all Administrative Claims (other than Administrative Claims paid in the ordinary course of business pursuant to Article 2 hereof and Claims for U.S. Trustee fees), which date shall be fourteen (14) days after the Confirmation Hearing. Holders of such asserted Administrative Claims must file an application for payment of Administrative Claim with the Bankruptcy Court on or before such Administrative Expenses Bar Date or forever be barred from doing so. The notice of Confirmation shall set forth the Administrative Expenses Bar Date, and the Reorganized Debtor and any other party in interest shall have ten (10) days following the Administrative Expenses Bar Date to review and object to such Administrative Claims. All such objections shall be litigated to Final Order; provided, however, that the Debtor may compromise and settle, withdraw or resolve by any other method, without requirement of Bankruptcy Court approval, any objections to Administrative Claims.

**13.01.02  Professional Fee Claims**. All final applications for Professional Fee Claims must be filed and served on the Debtor and its counsel no later than fourteen (14) days after the Effective Date, reflecting fees and expenses incurred as of the end of the month preceding the date of the Confirmation Hearing, with an estimate for the fees and expenses incurred from the end of such month through the later of the Effective Date or the time period covered by such application. Objections to any such applications must be filed and served on the requesting Professional or other Entity, no later than ten (10) days (or such other period as may be allowed by order of the Bankruptcy Court or as otherwise agreed to between the parties) after the date on which the applicable application for compensation or reimbursement was served.

**13.03  Nonseverability of Plan Provisions**. If, prior to Confirmation, any term or provision hereof is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such

term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

**13.04 Successors and Assigns**. The rights, benefits and obligations of all Persons named or referred to herein shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns.

**13.05 Injunction**. Upon entry of the Confirmation Order, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, from taking any actions to interfere with the implementation or consummation of the Plan.

Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all Enjoined Parties are and shall be permanently enjoined, on and after the Effective Date, with respect to any Claims, from directly or indirectly (i) commencing, conducting, or continuing in any manner any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Estate or the property of the Estate, (ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering, enforcing, or attempting to recover or enforce, by any manner or means, any judgment, award, decree, or order against the Estate or the property of the Estate, (iii) creating, perfecting, or otherwise enforcing in any manner, any security interest, lien or encumbrance of any kind against the Estate or the property of the Estate, (iv) asserting any right of setoff, directly or indirectly, against any obligation due to the Estate or against property or interests in property of the Estate, except to the limited extent permitted under sections 553 and 1141 of the Bankruptcy Code, and (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

The injunctions set forth herein shall extend to and apply to any act of the type set forth in any of clauses (i)-(v) of the immediately preceding paragraph against any successors of the Estate.

a. <u>Duration of Injunctions and Stays</u>. Unless otherwise provided in the Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Case in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise (excluding any injunctions or stays contained in the Plan or the Confirmation Order), and in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date or the date indicated in such applicable order.

b. The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date, at which time the injunctions described in this Plan shall come into effect with no gap in time.

**13.06 Exculpation and Limitation of Liability**. To the maximum extent permitted by applicable law, the Exculpated Party will not have or incur, and the Exculpated Party is hereby

exculpated from, any claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for conduct occurring on or after the Filing Date in connection with or arising out of (i) the filing and administration of the Chapter 11 Case; (ii) the solicitation of votes for, or confirmation of, the Plan; (iii) the funding or consummation of the Plan or any related agreements, instruments, or other documents, the solicitation of votes on the Plan; (iv) the implementation of the Plan; and (v) any negotiations, transactions, and documentation in connection with the foregoing clauses (i)-(iv); provided, however, the foregoing will not apply to any acts or omissions of the Exculpated Party arising out of or related to acts or omissions that constitute bad faith, fraud, gross negligence, criminal misconduct, or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, any other applicable law or rules, or any other provisions of this Plan protecting the Exculpated Party from liability.

**13.07   Releases**.

a.      <u>Releases by the Debtor</u>. On and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor and its Estate, in each case on behalf of themselves and their respective successors, assigns, and representatives, from any and all Causes of Action, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort or otherwise, that the Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim against the Debtor or other Person. Notwithstanding anything contained herein to the contrary, the foregoing release does not release: (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan; or (ii) any Causes of Action arising from willful misconduct, criminal misconduct, actual fraud, or gross negligence of such applicable Released Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction.

The releases set forth in this Section 13.07, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that such releases are: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the claims released by such releases; (3) in the best interests of the Estate; (4) fair, equitable and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Estate asserting any claim or cause of action released pursuant to such releases.

c.      <u>Waiver of Statutory Limitations on Releases</u>.  Each of the Releasing Parties in each of the releases contained above expressly acknowledges that although ordinarily a general release may not extend to Claims which the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims. Without limiting the generality of the foregoing, each Releasing Party expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of providing the release, which if known by it may

have materially affected its settlement with the Released Party. The releases contained in this Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

**13.08   Retention of Causes of Action.**  It is the intent of the Debtor and the Reorganized Debtor to retain and continue to prosecute any and all Causes of Action including, without limitation, any and all claims pursuant to the Palencia Adversary, the Maresma Adversary (unless settled pursuant to the Maresma Compromise), and matters related to the SPB Claims.

**13.08   Binding Effect**. Upon the occurrence of the Effective Date, this Plan shall be binding upon and inure to the benefit of the Estate, all present and former Holders of Claims against the Debtor, its respective successors and assigns, including the Reorganized Debtor, all other parties-in-interest in the Chapter 11 Case (irrespective of whether such Claims are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property pursuant to the Plan, and any and all non-Debtor parties to Executory Contracts and Pre-Petition Unexpired Leases with the Debtor.

**13.09   Revocation, Withdrawal, or Non-Consummation**. The Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans. If the Debtor revokes or withdraws this Plan, or if Confirmation or the Effective Date hereof does not occur, then (a) this Plan shall be null and void in all respects, (b) any settlement or compromise, not already approved by an order of the Court, embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void, and (c) nothing contained herein, and no acts taken in preparation for the Effective Date, shall (x) constitute or be deemed to constitute a waiver, withdrawal, or release of any Claims by or against the Debtor or any other Entity, (y) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Debtor or any other Entity.

**13.10   Miscellaneous.** Closing the Estate - The Debtor may petition the court to close the Estate on or after the Effective Date, and upon substantial consummation of the Plan.

**13.11   Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of (a) the State of Texas shall govern the construction and implementation hereof and any agreements, documents, and instruments executed in connection with this Plan and (b) the laws of the state of incorporation or organization of the Debtor shall govern corporate or other governance matters with respect to the Debtor, in either case without giving effect to the principles of conflicts of law thereof.

Dated: December 1, 2023

Respectfully submitted,

By:    /s/ John C. Robinson
        JOHN C. ROBINSON, CEO

27

BENTOLI, INC.
116 Hoxie S
Coupland, TX 78615-5035


By:    /s/ Ronald J. Smeberg
      RONALD J. SMEBERG
      State Bar No. 24033967
      THE SMEBERG LAW FIRM, PLLC
      4 Imperial Oaks
      San Antonio, Texas 78248
      210-695-6684 (Tel)
      210-598-7357 (Fax)
      ron@smeberg.com
      ATTORNEY FOR THE DEBTOR

**Bentoli, Inc**
*Liquidation Analysis*

| Assets | Scheduled Value | Estimated Liquidation Value | |
|---|---|---|---|
| | | Low | High |
| Cash | $ 4,694 | $ 4,694 | $ 4,694 |
| Accounts Receivable | 504,497 | 378,373 | 479,273 |
| Inventory | 153,170 | 38,000 | 77,000 |
| Prepaids & Deposits | 34,910 | 1,000 | 10,000 |
| Machinery, Equipment, and Other Fixed Assets | 26,382 | 5,000 | 15,000 |
| Trademarks & Patents | *Unknown* | – | 100,000 |
| **Total Assets** | **$ 723,654** | **$ 427,067** | **$ 685,967** |
| | | | |
| *Administrative Expenses:* | | | |
| Chapter 11 Professionals | | 10,000 | 20,000 |
| Subchapter V Trustee | | 5,000 | 10,000 |
| Chapter 7 Trustee | | 12,812 | 20,579 |
| Chapter 7 Professionals & Other Admin Expenses | | 25,000 | 75,000 |
| **Total Administrative Expenses** | | **$ 52,812** | **$ 125,579** |
| | | | |
| **Available For Distribution To Creditors** | | **$ 374,255** | **$ 560,388** |
| | | | |
| Payment to Secured Creditors | $ 483,469 | $ 374,255 | $ 483,469 |
| | | | |
| **Available for Distribution to Unsecured Creditors** | | **$ –** | **$ 76,919** |

# Exhibit B

**Bentoli, Inc**
Projected Disposable Income

| Total Projected Disposable Income over 5 years: | $ | 425,000 |
|---|---|---|

|  | 2024 | 2025 | 2026 | 2027 | 2028 |
|---|---|---|---|---|---|
|  | **Year 1** | **Year 2** | **Year 3** | **Year 4** | **Year 5** |
| Product Sales | $  1,970,257 | $  2,276,306 | $  2,495,489 | $  2,638,262 | $  2,770,853 |
| Licensing Fees | 120,000 | $     120,000 | 120,000 | 120,000 | $     120,000 |
| **Total Revenue** | **$  2,090,257** | **$  2,396,306** | **$  2,615,489** | **$  2,758,262** | **$  2,890,853** |
| COGS | 1,379,180 | 1,593,414 | 1,746,842 | 1,846,783 | 1,939,597 |
| **Gross Profit** | **$     711,077** | **$     802,892** | **$     868,647** | **$     911,479** | **$     951,256** |
| General Administrative Expenses | 563,652 | 628,946 | 676,436 | 692,344 | 717,690 |
| **Total Expenses** | **$     563,652** | **$     628,946** | **$     676,436** | **$     692,344** | **$     717,690** |
| **Net Income** | **$     147,425** | **$     173,946** | **$     192,211** | **$     219,135** | **$     233,566** |
| Capital Expenditures | 25,000 | 25,000 | 25,000 | 40,349 | 54,780 |
| Chapter 11 Administrative Expenses | 10,200 | 10,200 | 10,200 | 10,200 | 10,200 |
| Secured Debt Service | 71,117 | 83,586 | 83,586 | 83,586 | 83,586 |
| Backstop by Liminality | (43,892) | (29,840) | (11,575) | (0) | 0 |
| **Projected Disposable Income** | **$       85,000** | **$       85,000** | **$       85,000** | **$       85,000** | **$       85,000** |

**EXHIBIT C**

**Waterfall Definition**

1.  <u>Waterfall</u>. If and to the extent that the Debtor or the Reorganized Debtor, as the case may be, recover cash as a result of a judgment or settlement of any cause of action belonging to the Debtor's Estate (each an "***Estate Cause of Action***") during the five year period that distributions are made under the Plan (collectively, the "***Recovery Proceeds***"), such Recovery Proceeds shall be distributed as follows:

    i.   To Liminality (or its successor or assign) in an amount necessary to fully repay all fees, costs and expenses funded by Liminality for any advances made to the Reorganized Debtor as a Tier 2 Loan (as defined in the Promissory Note and Security Agreement found in the Debtor's Plan Supplement) in respect of any Estate Cause of Action, plus interest as provided in the Liminality loan documents (the "***Liminality Reimbursement***").

    ii.  Unpaid fees and expenses owing to the counsel and any other professionals retained by the Debtor or the Reorganized Debtor, as the case may be, related to any Estate Cause of Action (the "***Unpaid Professional Fee Amount***") (the sum of the Liminality Reimbursement and the Unpaid Professional Fee Amount shall be referred to as the "***Repayment Amount***").

    iii. To the extent that the Recovery Proceeds exceed the Repayment Amount (the "***Excess Proceeds***"), then the Reorganized Debtor shall remit the Excess Proceeds up to an amount equal to the Repayment Amount as additional proceeds (the "***Additional Proceeds***") to Liminality.

    iv.  If the total allowed general unsecured claims exceeds the sum of the (a) net disposable income provided for under the Plan, and (b) Additional Proceeds, then twenty five percent (25%) of the remaining Recovery Proceeds, if any, shall be remitted to the Disbursing Agent to be paid ratably to holders of allowed unsecured claims up to the full amount of such allowed claims (the "***GUC True-Up***"). If there are any Recovery Proceeds after giving effect to the (a) Repayment Amount, (b) Additional Proceeds, and (c) GUC True-Up, any such amounts will remain with and be the property of the Debtor or the Reorganized Debtor, as the case may be.

    v.   For the avoidance of doubt, allowed unsecured creditors shall only receive payments from the Recovery Proceeds and from Projected Disposable Income up to their allowed claim amount. In no instance shall an unsecured creditor receive distributions in excess of its allowed claim.